**UNITED STATES of America, and Russell G. Talbot, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**Ned WILLIS, Respondent,**

and

**William M. Siglin and Virginia J. Siglin, Intervenors.**

**Civ. No. 81–511–C.**

United States District Court,
S.D. Iowa, C.D.

May 13, 1983.

Marshall I. Whitley, Tax Div., Dept. of Justice, Washington, D.C., and Richard Turner, Des Moines, Iowa, Helen L. Duncan, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for petitioners.

Bruce B. Graves, Jill Thompson Hansen, Harold N. Schneebeck, Jr., Des Moines, Iowa, for movant intervenors W. & V. Siglin.

William Sidney Smith, Smith, Schneider & Stiles, P.C., Des Moines, Iowa, for respondent Ned Willis.

Thomas W. Carpenter, Chairman, Tax Committee, Des Moines, Iowa, for amicus curiae.

## RULING AND ORDER

STUART, Chief Judge.

The Court has before it the parties' objections to Magistrate Longstaff's July 26, 1982 Report and Recommendation (hereinafter Report). A copy of the Report is hereto attached as Appendix A. The procedural history of this action is set forth at the outset of the Report and will not be repeated herein.

The parties have not objected to the analysis and conclusions contained in Divisions I and II of the Report. The Court has reviewed these well-reasoned divisions and hereby adopts them in their entirety.

### Petitioners' Objections to Division III of Report

Petitioners object to Magistrate Longstaff's decision to permit the Siglins to de-

scribe some of the listed documents in more detail in an attempt to cure some of the list's currently deficient descriptions. Petitioners argue that the burden upon the Siglins was clear from the outset and that any curable deficiencies in the documents' descriptions resulted from the Siglins' own tactical decision to withhold the necessary detail from descriptions contained in the January 5, 1982 list.

■ Although the Court is not unsympathetic to the concerns voiced by the IRS in opposition to supplementation, the Court believes that the Siglins should be afforded an opportunity to supplement their descriptions in all of the recommended instances, as well as in other instances noted below. This is not a case where claims of privilege were asserted in blanket fashion. Too detailed descriptions, if disclosed to the IRS, might well reveal information truly entitled to privileged protection against disclosure. The party resisting disclosure is forced to unilaterally strike the difficult balance between too little and too much detail in describing the documents claimed to be privileged. Where, as here, a good faith effort by that party errs on the side of too little detail, supplementation furnishes an appropriate mechanism by which the balance may be refined. Thus, petitioners' general objection to supplementation is hereby overruled.

Petitioners also object to the Report's conclusion that Willis was acting as a professional legal adviser in preparing tax returns for the Siglins.

Both the Magistrate and the parties have employed the following definition of the attorney-client privilege:

> Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived.

8 J. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961).

This summons enforcement proceeding raises a difficult and serious question: When a client communicates to his or her attorney for the purpose of securing the attorney's tax return preparation services, has the client sought "legal advice", within the meaning of the privilege? The parties and Magistrate Longstaff have exhaustively analyzed the many facets of this question and have ably canvassed the pertinent caselaw.

The Court is well aware of the need for clear guidelines designed to foster reasonable expectations on the part of both lawyers and their clients. Lawyers and clients are entitled to adequate forewarning as to whether information communicated by the latter to the former will be protected against unwanted, compelled disclosure at some future time.

■ Having reviewed the caselaw and the parties' arguments, the Court is of the opinion that, as a general rule, where a client entrusts the task of *income tax return preparation* to his or her lawyer, the client's communications related to that task are not made for the purpose of seeking "legal advice", within the meaning of the attorney-client privilege.

Income tax preparation can be legally performed by lawyers and nonlawyers, alike. Income tax return preparation undeniably involves the application of the tax laws to each taxpayer's unique financial circumstances. However, although that fact might support a lawyer-nonlawyer distinction in other contexts, the Court does not believe it compels such a distinction in the income tax return preparation context. Unlike most other areas in which statutes impose legal obligations on the citizenry, in the income tax return preparation context the government has researched and interpreted the tax laws for the taxpayer in advance. The results of the government's efforts are manifested in the variety of income tax return preparation instructions and informational publications issued by the government. These instructions and publications are supposedly written in everyday language, to permit a taxpayer to prepare

his or her own return. To the extent that the taxpayer cannot understand the instructions or simply does not wish to be subjected to this universally-frustrating task, the taxpayer is free to engage the services of lawyer or nonlawyer tax return preparers, who can also find guidance in the government-issued instructions and pamphlets.

The Court is not unmindful that questions occasionally arise in the income tax preparation context which require research and interpretation of the tax statutes and regulations beyond that manifested in the government-prepared instructions and pamphlets. However, on balance, the differences between lawyer and nonlawyer income tax return preparers are ones in degree, not in kind.

The Siglins and the Report relied upon the following authority in concluding that, in all instances, the Siglins had communicated with Willis for the purpose of seeking legal advice:

> It is not easy to frame a definite test for distinguishing *legal from nonlegal advice.* * * * The most that can be said by way of generalization is that a matter committed to a professional legal adviser *is prima facie so committed for the sake of the legal advice* which may be more or less desirable for some aspect of the matter and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice.
>
> Obviously, much depends upon the circumstances of individual transactions.

*Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 610 (8th Cir.1977) (*en banc*), *quoting* 8 Wigmore, *supra,* § 2296 (emphasis included).

Although the Court could read the "lacking in aspects *requiring* legal advice" phrase strictly and hold that income tax preparation does not *require* legal advice, the Court believes the better approach is to hold the *Diversified* presumption inapplicable in the income tax return preparation context. The Court believes that in its disinclination to apply the *Diversified* test in that context is warranted by the Court of Appeals' heavy reliance in Diversified on

considerations not implicated by the instant action; *to wit:*

(1) The *Diversified* law firm's assignment involved analyzing the facts revealed by its investigation, with an eye toward evaluating the legal propriety of the corporation's actions and recommending possible future courses of action;

(2) The nature of the *Diversified* law firm's assignment was such that it could not be wholly performed by an accountant and/or a lay investigator;

(3) The public policy favoring corporate self-discipline would be advanced by according the privilege's protections to in-house investigative interviews conducted by necessarily independent professionals.

*See Diversified, supra,* 572 F.2d at 610.

Moreover, the Court's refusal to apply the *Diversified* test in the income tax return preparation context is consistent with the Circuit's earlier opinion in *Canaday v. United States,* 354 F.2d 849, 854 (8th Cir.1966) (attorney-client privilege inapplicable because lawyer who filled out client's tax return "acted not as a lawyer but merely as a scrivener"). *See also United States v. Davis,* 636 F.2d 1028, 1043 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (tax return preparation is "primarily an accounting service").

■ However, the Court is of the opinion that where tax *planning* advice is sought from a lawyer, the "legal advice" prong of the Wigmore formula is satisfied. In the Court's opinion, there is a marked distinction between tax planning and income tax return preparation. Tax planning is concerned with current or future tax periods. It entails advising a client on how best to structure contemplated financial transactions, decisions, or occurrences from a tax consequences standpoint; the identification of the various means by which a particular tax objective of the client can be achieved; and other before-the-fact research and advice. The *Diversified* presumption would be applicable to tax planning.

Income tax return preparation, on the other hand, involves closed tax periods and entails evaluating the tax consequences of previously-consummated transactions and occurrences; compiling the information pertinent to those transactions and events; categorizing, classifying, and otherwise organizing that information in a way which corresponds with the classifications and categories appearing on tax return forms; selecting among the various available tax forms; electing the most advantageous tax filing status; computing the final figures to be included on the taxpayer's return on the basis of the raw information available; completing the tax return; and other after-the-fact services ultimately aimed at satisfying the disclosure requirements for the tax period in question. Such information routinely furnished by taxpayers to their nonlawyer income tax return preparers probably will not be protected by the privilege.

However, it should be noted that not all after-the-fact tax matters are to be regarded as falling within the income tax return preparation function. For example, a taxpayer under civil or criminal tax investigation might well seek an attorney's counsel as to the prospects of civil or criminal liability and the best way for the client to avoid or minimize any such liability. In the example given, the Court would view the taxpayer to have sought "legal advice * * * from a professional legal adviser in his capacity as such," within the meaning of the privilege. This would hold true, even though the attorney might ultimately advise the client to file an amended return. *See United States v. Cote,* 456 F.2d 142, 144 (8th Cir.1972) (decision whether to file an amended return in face of IRS investigation "undoubtedly involved legal considerations"). On the other hand, where no such investigation is pending or threatened, a lawyer's preparation of an amended tax return would probably not be viewed as falling outside the ambit of the tax return preparation function.

Petitioners next object to the Report's finding that "Willis was acting in a legal capacity in preparing real estate documents and contracts for the Siglins." Report at 10.

■ Although the Court has declined to apply the *Diversified* presumption in the income tax return preparation context, the Court is of the opinion that the *Diversified* presumption should and does apply in the context of Willis' preparation of real estate documents and contracts for the Siglins. The *Diversified* presumption is rebuttable. *See Diversified, supra,* 572 F.2d at 610. However, the IRS has not objected to the Report's failure to afford petitioners an opportunity to supplement their attempts to rebut that presumption, nor has the IRS sought to require the Siglins to supplement their descriptions so as to afford the IRS a fair opportunity to meet its burden. Accordingly, the Court hereby overrules this objection.

Petitioner's fourth objection relates to the Report's findings that compliance with the summons would implicitly authenticate documents prepared by the Siglins and that such documents can only be obtained via a grant of use immunity from the government. This objection will be addressed in connection with intervenors' sixth objection, *post* at 1197.

Finally, petitioners object to the Report's findings (1) that the IRS has failed to establish that it has substantial need for privileged work product documents, and (2) that the IRS has failed to show that it is unable to obtain the information elsewhere without undue hardship and has substantial need for that information. The IRS argues that it did not have a fair opportunity to meet its burden because the Siglins' descriptions of these documents were insufficient to permit such a showing. The IRS complains that, although the Siglins were permitted to supplement inadequate descriptions in other areas, no such supplementation was permitted or required as to these documents, thus depriving the IRS of the additional information it needed to attempt to meet its burden.

■ Although the requested supplementation might at first glance appear helpful,

the Court's own *in camera* examination of the 23 documents in question has persuaded it that such supplementation would be pointless. Eight[1] of the documents claimed privileged under the work product doctrine are photocopies of generally-available legal authorities (e.g., agency decisions which are public records, administrative code provisions, published treatises, and the like), which the IRS could easily obtain elsewhere. Some of these photocopies bear notations and underlining of and by Willis or his legal staff. The Court does not believe that the IRS is entitled to discover these notations and indications of emphasis. Ten[2] of the documents contain attorney impressions, conclusions, or opinions and are entitled to nearly absolute protection. *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977). The Court is satisfied that this case does not present "very rare and extraordinary circumstances," *ibid.,* rendering such matters discoverable. The information in one[3] of the documents is plainly obtainable elsewhere without undue hardship, while two[4] of them contain no information for which the IRS could conceivably have "substantial need."

■ The Court is of the opinion that the two[5] remaining documents do not constitute work product and should, therefore, be disclosed, unless they are otherwise privileged. The Siglins have asserted that these two documents are protected against disclosure by the attorney-client privilege, in addition to their claim of work product protection. Neither of these two documents are communications from the Siglins to Willis or Willis' assistants. Nor can they arguably be deemed to reflect client confidences made to obtain legal advice. Accordingly, the Court is of the opinion that the summons should be enforced as to Documents Nos. 20 and 21.

### Intervenors' Objections to Division III of the Report.

Intervenors have grouped various specific objections into six general objections pertaining to the following types of documents: (1) Drafts and unexecuted documents from which client confidences can be inferred, (2) Preliminary drafts of and calculations on tax forms, (3) Attorney research reflecting client confidences, (4) Attorney notes, (5) Communications by or with third parties, (6) Pre-existing documents which would have been privileged in the Siglins' hands under the Fifth Amendment.

The Siglins have specifically listed the Category 1 documents with respect to which they object to the Magistrate's recommendation that the summons be enforced. The Court is of the opinion that the summons should be enforced as to any documents, which were claimed privileged solely under Category 1, which documents the Magistrate recommended be disclosed, and to which recommendation the Siglins have not specifically objected.[6]

The Siglins' first two objections will be addressed in combination, in view of their similarities. The Siglins object to the Report's conclusion that the summons should be enforced as to undisclosed preliminary drafts of documents (including tax forms), which documents were ultimately disclosed to the IRS or other third parties in final drafts that differed from the preliminary drafts.

The Report concluded that the preliminary drafts are of "documents of a type designed to be disclosed to third parties", were not intended to be confidential and

---

1. Documents Nos. 3, 4, 12, 13, 15, 16, 23, and 31.

2. Documents No. 5–11, 18, 22, and 30.

3. Documents No. 14.

4. Documents Nos. 17 and 19.

5. Documents Nos. 20 and 21.

6. Documents Nos. 1, 103, 117, 136, 228, 237, 240, 241, 242, 243, 244, 245, 246, 249, 289, 301, 320, 325, 359, 360, 361, 362, 366, 368, 371, 375, 420, 421, 422, 423, 437, 441, 450, 453A, 453D, 471, 476, 506, 507, 508, 518, 531, 532, 534, 536, 537, 538, 547, 556, 568, 580, 581, 582, File Cover, 583, 586, 600, 601, 610, 612, 614, 623, 627, 642.

therefore are unprivileged. The Report alternatively noted that the preliminary drafts in all likelihood constituted "underlying detail" of information already reported to the IRS and, accordingly, the drafts were not privileged. Finally, the Report specifically concluded that information contained in Willis' drafts of and preliminary computations on tax forms "is assumed to have been intended to be transmitted to the IRS and is therefore not confidential."

■ Chief Judge Urbom has cogently analyzed the dangers entailed by judicial inquiries into whether a client intended that his or her attorney disclose to third parties information which the attorney ultimately did not in fact so disclose. *United States v. Schlegel*, 313 F.Supp. 177 (D.Neb.1970). While noting the argument that information conveyed by the client to an attorney for use in the preparation of an income tax return is intended to be transmitted to the IRS and, thus, unprivileged, Chief Judge Urbom nevertheless concluded that

> ... a more realistic rule would be that the client intends that only as much of the information will be conveyed to the government as the attorney concludes should be, and ultimately is, sent to the government. In short, whatever is finally sent to the government is what matches the client's intent.

*Id.* at 179. The Court is of the opinion that the adoption of the *Schlegel* rule is warranted, and should extend to all information conveyed by the client to the attorney and not disclosed by the attorney to any third party.[7]

■ In adopting the *Schlegel* rule, the Court does not intend to alter or eliminate the established principle that disclosure of information via submission of a tax return effects a waiver as to the details underlying the information reported. *See United States v. Cote, supra,* 456 F.2d at 145 (and authorities cited therein). Moreover, the Court wishes to emphasize that the *Schlegel* rule relates only to the client's intent as to

confidentiality and does not eliminate the need for the Siglins to establish all other aspects of the privilege, including that aspect requiring that the communication have been made for the purpose of obtaining legal advice. *See ante* at 1189–1191.

■ The Report applied the *Cote* "underlying detail" rule as an alternative ground in support of the Report's conclusion that the preliminary drafts were not entitled to the protection of the privilege. Financial information reported on a tax return often consists of summary figures or figures derived via undisclosed calculations. "Underlying detail" of financial figures disclosed on a tax return consists of (1) the amount, character, and source of the components represented by the reported figure and (2) the mathematical computations employed to derive the reported figures and such figures' components. In short, the IRS is entitled to know the accounting details of figures reported on returns, notwithstanding claims of attorney-client privilege.

■ In the instant case, the Court is of the opinion that preliminary drafts of instruments, contracts, deeds, corporate documents, leases, articles of partnership, agreements, escrow forms, promissory notes, and loan applications do not constitute mere underlying detail of information disclosed on the Siglins' income tax returns. As for preliminary drafts of tax forms and schedules, the Court cannot say that these necessarily constitute mere underlying detail of information actually reported to the IRS. Accordingly, as to the preliminary drafts of tax forms and schedules, the Siglins should be given an opportunity to show that the drafts do not constitute mere underlying detail.

Intervenors' third and fourth objections will also be addressed in combination, in view of their similarities. Both objections pertain to attorney-created materials from which client confidences can allegedly be inferred. The third objection also pertains

---

7. The Court's reference to "third party" is not intended to include persons whose services "are a necessary aid to the rendering of effec-

tive legal services to the client." *United States v. Cote,* 456 F.2d 142, 144 (8th Cir.1972).

to newspaper and journal articles contained in Willis' files on the Siglins.

The Report concluded that Willis' research materials (including the newspaper and journal clippings) would be protected, if at all, only by the "attorney work product" doctrine—not by the attorney-client privilege. As to documents which the Siglins described in the list as "attorney notes," "calculations," or "worksheets," the Report concluded that the Siglins' failure to describe these materials as being based on or reflective of client confidences rendered the privilege inapplicable. The Siglins take exception to both of these conclusions and request an opportunity to supplement their descriptions of the documents in question.

■■■■■ The Report states that, "[i]f from the attorney notes one can infer client confidences, then the attorney notes fall within the privilege." The Court agrees with that statement. However, the Court perceives no reason to apply a different rule to an attorney's notes and research materials. If client confidences can be inferred from Willis' hitherto undisclosed notes or research materials, then those items are privileged against production. Of course, the Siglins still bear the burden of (1) establishing that the attorney notes and research reflect confidential client communications; (2) identifying those communications that are so reflected; (3) establishing that those communications were made to Willis in confidence; and (4) establishing that the privilege has not been waived.

■■■ In response to the Report's conclusion that the Siglins failed to assert that the materials and notes in question contained or reflected client confidences, the Siglins argue that such an assertion was implicit in the Siglins' decision to list the materials and notes as "Category 1" documents; i.e., documents allegedly protected by the attorney-client privilege. See Siglins' Jan. 5, 1982 List, Appendix A. The effect of accepting the Siglins' "implicit assertion" argument would be to countenance blanket assertions of the privilege, for it could be argued with equal force that any invocation of the attorney-client privi-

lege carries with it the implicit assertion that each allegedly privileged document possesses all aspects of the Wigmore definition of the privilege. Blanket assertions of privilege have been roundly and soundly condemned. See, e.g., Colton v. United States, 306 F.2d 633, 639 (2d Cir.1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). The burden is on the proponent of the privilege to establish all aspects thereof, whether with or without the assistance of legal presumptions. The Siglins' "implicit assertion" theory is untenable.

The Siglins' fifth objection challenges the Report's failure to afford them an opportunity to supplement their descriptions of some. documents involving third parties. The Court agrees with the Siglins that, if supplementation is permitted with regard to some documents prepared by or disclosed to persons other than Willis or the Siglins, supplementation should be permitted as to all such documents. Accordingly, the Siglins' fifth objection is hereby sustained. The Siglins should bear in mind that their burden of establishing that the privilege has not been waived by disclosure to third parties cannot be satisfied merely by submitting supplemental conclusory averments.

Intervenors' sixth objection may be broken into two parts. First, the Siglins object to Magistrate Longstaff's rejection of their theory that papers prepared by the Siglins, or under their immediate supervision, which pertain to their personal business matters, would be absolutely privileged in their hands by reason of the Fifth Amendment privilege against compulsory self-incrimination. Second, they object to the Magistrate's conclusion that, to the limited extent that the Fifth Amendment privilege would protect against the production of documents prepared and held by the Siglins, the government could remove such protection via a grant of immunity against the use of the Siglins' act of producing the summoned documents. Because petitioners' fourth objection also pertains to the Report's discussion of the government's use immunity option, the Court will address that objection in connection with the analysis of the

second part of the Siglins' sixth objection, *infra*, at 1197–1198.

■ The summons at the heart of this enforcement action is directed to respondent Ned Willis, who is attorney for William and Virginia Siglin, the intervenors herein. To the extent that the summons seeks the production of documents, it seeks documents in Willis' possession. Whatever privileges Willis asserts against the documents' production are asserted on behalf of the Siglins, not on Willis' own behalf. The Court does not understand the Siglins to assert that they were compelled by the government to create any of the documents now in Willis' possession. Thus, the summons' enforcement would not compel the *Siglins* to do anything of testimonial or nontestimonial nature. Under these circumstances, to the extent that Willis or the Siglins may be understood to have challenged the summons' enforcement solely on the basis of the Fifth Amendment privilege against compelled self-incrimination, the Court hereby rejects such challenge. *See Fisher v. United States,* 425 U.S. 391, 396–401, 96 S.Ct. 1569, 1573–1576, 48 L.Ed.2d 39 (1976); *Couch v. United States,* 409 U.S. 322, 329–35, 93 S.Ct. 611, 616–619, 34 L.Ed.2d 548 (1973).

■ The documents in question did not come into existence as "communications" from the Siglins to Willis, but were "preexisting documents," turned over to Willis by the Siglins. Because they are not "communications," they do not fall within the scope of the traditional attorney-client privilege, as defined by Wigmore. However, the Supreme Court has recognized that, where pre-existing documents would be protected by the Fifth Amendment privilege against compulsory self-incrimination in the *client's* hands, a rule holding such documents unprotected by the attorney-client privilege following the documents' transfer into the client's *attorney's* hands would discourage full disclosure by clients to their attorneys. *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Accordingly, the *Fisher* Court held that where docu-

ments, which would have been privileged in the hands of the client by reason of the Fifth Amendment, are transferred to the client's attorney for the purpose of obtaining legal advice, the attorney-client privilege protects against the documents' compelled production. *Id.* at 403–05, 96 S.Ct. at 1577–1576. Thus, application of the *Fisher* rule to pre-existing documents requires the Court to engage in a two-pronged inquiry: (1) Would the documents have been privileged against production in the client's hands? and (2) Were the documents transferred to the attorney for the purpose of obtaining legal advice?

As to the first prong of the *Fisher* inquiry, the Siglins do not object to the Magistrate's conclusions that, in order to fall within the scope of the Fifth Amendment privilege in the Siglins' hands, the pre-existing documents must have been held by the Siglins in an individual capacity, and that such documents must have been prepared either by the Siglins or under their immediate supervision. However, they object to the Magistrate's conclusion that, because the documents in question were "business-related," their contents would not have been entitled to Fifth Amendment protection in the Siglins' hands. The Siglins urge the Court to recognize absolute Fifth Amendment protection for the contents of "personal business" documents prepared by the Siglins or under their immediate supervision.

The Siglins' objection rests in large part upon the following *dicta* found in *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974):

The [Fifth Amendment] privilege applies to the *business records of a sole proprietor* or sole practitioner containing more personal information about the individual's private life.

*Id.* at 87–88, 94 S.Ct. at 2182–2183 (emphasis added); *see United States v. Harrison,* 653 F.2d 359, 361 (8th Cir.1981) ("It is well established . . . that [the Fifth Amendment] privilege applies to the business records of a sole proprietor . . ., as well as to

documents of a purely personal nature.") (citing *Bellis, supra* ) (*dicta* ).

In *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627, (1976), state investigators, in the course of executing a search warrant, seized business records of a sole practitioner from his office. The *Andresen* Court rejected the attorney's Fifth Amendment claim, quoting the *Fisher* Court's statement that "the Fifth Amendment protects against compelled self-incrimination, not [against the disclosure of] private information." 427 U.S. at 477, 96 S.Ct. at 2746.

■ Thus, the crucial question in the instant case is whether the *Bellis dicta* has survived *Fisher* and *Andresen.* Although *Andresen* involved a search warrant, while the instant action involves an IRS summons, the Court fully agrees with the Magistrate that, for purposes of determining the protection to which the contents of those documents are entitled under the Fifth Amendment, it is illogical to distinguish between documents seized in a search and documents obtained via enforcement of a summons. *See In re Grand Jury Proceedings (United States),* 626 F.2d 1051, 1056 (1st Cir.1980) ("anomalous [to] . . . prevent the lesser intrusion of subpoena while permitting the greater intrusion of search and seizure").

Disallowing Fifth Amendment protection for the contents of business-related records does not require the Court to declare the "content theory" of Fifth Amendment privilege dead for all purposes. *Fisher's* applicability to nonbusiness, intimate personal papers remains an open question. *In re Grand Jury Proceedings (United States), supra,* 626 F.2d at 1054, n. 2 (citing *Fisher, supra,* 425 U.S. at 401, n. 7, 96 S.Ct. at 1576, n. 7). The Court is well aware that the Eighth Circuit has reiterated the *Bellis dicta* subsequent to *Fisher* and *Andresen. United States v. Harrison,* 653 F.2d 359, 361 (8th Cir.1981). However, *Harrison's* reiteration of *Bellis* was, itself, *dictum,* and the question of the combined impact of *Fisher* and *Andresen* on *Bellis* was not addressed.

Although the Siglins argue for a rule that would absolutely protect their business records from disclosure, they also argue in the alternative that such records are protected by the Fifth Amendment because Mr. Siglin's personal tax liability is "inextricably intertwined" with his records of his business involvement. This fall-back argument seeks to unduly expand the concept of "personal" records. The Siglins apparently believe that the proper place to draw the line of Fifth Amendment protection is between what might be dubbed "personal business records" and "business business records" (contrasting Mr. Siglin's personal business activities and the business activities of the corporations with which he is involved). The proffered distinction is rooted in the *Bellis* "sole proprietor" *dicta,* which, in the Court's opinion is no longer viable. However, the argument is flawed even if *Bellis'* *dicta* remained viable.

In *Bellis,* the Court held that one of three partners could not invoke the Fifth Amendment to thwart the production of subpoenaed partnership records. A partnership pays no income tax, but is viewed as a mere conduit through which income flows to the partners. Thus, the same "inextricably intertwined with personal tax liability" argument, which could have been made in *Bellis,* was implicitly, but necessarily, rejected by the Court in that case. Indeed, in *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913), the Court held that the Fifth Amendment did not afford the corporation's sole shareholder protection against production of the corporation's records.

Finally, to the extent that the Siglins can be understood as arguing that the Fifth Amendment protects against disclosure of their business related documents because truly personal, nonbusiness information is "inextricably intertwined" with business information, their argument proves too much. They should not be permitted to protect otherwise unprotected business records from disclosure simply by commingling personal and business information. Indeed, even if the Fifth Amendment was viewed as protecting against the disclosure of private papers, *contra Andresen, supra,* 427

U.S. at 477, 96 S.Ct. at 2746, such commingling manifests a lesser expectation of privacy than that in the contrasting situation wherein the two types of information are kept strictly segregated. Thus, even under a "privacy" theory of Fifth Amendment privilege, the documents would likely not be entitled to protection against disclosure under the circumstances present here.

■ In sum, the Court is of the opinion that the Magistrate correctly concluded that the contents of "business-related" documents are not protected by the Fifth Amendment privilege against compulsory disclosure.

The Court is further of the opinion that the Magistrate correctly applied Fifth Amendment principles to the facts present in the instant action. As the Magistrate correctly concluded, those documents not prepared by the Siglins or under their immediate supervision would not be entitled to Fifth Amendment protection against disclosure, were those documents currently in the Siglins' possession. The Court further agrees that supplementation is required as to the identities of the persons who prepared some of the documents. Finally, the Court agrees with the Magistrate that "compliance with the summons would impliedly authenticate the documents [prepared by the Siglins or under their immediate supervision], and thus * * * [such] documents are within the protection of the Fifth Amendment." Report at 34, *citing United States v. Plesons,* 560 F.2d 890, 893 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977); *see Fisher, supra,* 425 U.S. at 410, 413, 96 S.Ct. at 1580, 1582.

While recognizing that those documents prepared by the Siglins or under their immediate supervision are protected against compulsory disclosure by virtue of the *Fisher* "implicit authentication" rationale, the Magistrate nonetheless concluded that the summons could be enforced as to those documents, "should the government grant the Siglins use immunity as to the testimony implicit in the submission of the documents." Both petitioners and intervenors object to this conclusion.

The Siglins' objection is based upon their previously-rejected position that the contents of the "Category 2" documents are absolutely privileged against disclosure by the Fifth Amendment. *See ante* at 1195–1196. Accordingly, their objection is hereby overruled for the same reasons previously relied upon by the Court in rejecting their "absolute privilege" argument.

■ The IRS' fourth objection rests upon an argument that the decision whether to grant use immunity is properly entrusted to the executive, as opposed to the judicial, branch of the federal government. The Court has no quarrel with that proposition. However, the Court does not understand the Magistrate to have recommended that the Court usurp any executive function. The Magistrate merely identified a choice facing the IRS; he did not make that decision for the IRS. If the Siglins establish by way of supplementation that some documents are privileged against production under *Fisher, supra,* then the summons will not be enforced as to those documents. Under such circumstances, the IRS—not the Court—will have to weigh the advantages and disadvantages of granting immunity against the use of the fact of any such privileged documents' production in response to the summons. Accordingly, the Court hereby overrules petitioners' fourth objection.

As to the *Fisher* inquiry's second prong, the Report apparently relied upon its earlier conclusion, in stating without additional discussion that the documents "are pre-existing documents *which the Siglins turned over to Willis to obtain legal advice.*" (Emphasis added). However, in an earlier part of this Ruling, the Court has noted its disagreement with the Report's application of the *Diversified* presumption in the income tax return preparation context. *Ante* at 1190. In all but seven of their descriptions of the particular "Category 2" documents, the Siglins have asserted that the particular pre-existing document was turned over to Willis to obtain legal advice. To the extent that the Siglins sought Willis' tax preparation guidance, the Court holds that they did

not seek legal advice, within the meaning of the attorney-client privilege. *See ibid.*

In keeping with its favorable attitude toward supplementation, the Court is of the opinion that the Siglins should be afforded an opportunity to supplement their descriptions of the documents claimed privileged under Category 2 so as to specify whether said documents were transferred to Willis to obtain income tax return preparation advice or to obtain "legal advice", as that phrase has been defined by the Court.

In sum, the Court holds as follows:

(1) The summons should be and it is hereby enforced with respect to Documents Nos. 1, 20, 21, 41, 46, 47, 103, 117, 125, 126, 136, 155, 156, 157, 228, 237, 240, 241, 242, 243, 244, 245, 246, 249, 287, 289, 301, 303, 304, 305, 306, 307, 320, 325, 357, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 420, 421, 422, 423, 437, 441, 450, 453A, 453C, 453D, 453E, 453F, 469, 471, 473, 474, 476, 495, 498, 506, 507, 508, 518, 531, 532, 534, 536, 537, 538, 539, 542, 547, 551, 556, 557, 568, 580, 581, 582, File Cover, 583, 586, 600, 601, 610, 612, 614, 623, 627, 642. Respondent is hereby granted ten (10) days from the date of this Ruling to comply with the summons as to said documents.

(2) The summons should not be enforced with respect to Documents Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 22, 23, 30, 31, 328, 386, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 412, 413, 414, 415, 416, 417, 418, 419, 424, 425.

(3) The Siglins shall submit affidavits containing supplemental descriptions of all remaining documents not specifically mentioned in the two preceding paragraphs.

Having ruled on the parties' objections, the Court must now establish the ground rules which will govern subsequent proceedings in the above-entitled action.

In those instances where the Court has decided to permit supplementation by the Siglins, such supplementation is to be submitted to the Court on or before June 20, 1983.

Where descriptive supplementation by the Siglins has been permitted by the Court, such supplementation shall be furnished by way of affidavit and shall contain factual information sufficient to establish all aspects of the attorney-client privilege, including nonwaiver, in accordance with the principles set forth in this Ruling.

The Court will review the Siglins' supplemental affidavits *in camera.* The Court's decision to deny the IRS an opportunity to examine the Siglins' supplemental affidavits reflects the Court's view that any other approach would furnish the IRS too little information to permit a helpful response, while at the same time furnish too much information to adequately protect any truly privileged documents. However, within ten (10) days of the supplemental affidavits' submission, the IRS may submit a listing of no more than thirty (30) documents which it believes warrant particularly close scrutiny by the Court.

Any documents as to which supplementation is permitted, but which have not been supplementally described within the time allotted, shall promptly thereafter be made available to the IRS pursuant to the summons.

In the event that supplemental descriptions submitted by the Siglins do not satisfy all elements necessary to establish the attorney-client privilege, the Court will not afford the Siglins another opportunity to cure those deficiencies but will determine the applicability of the privilege on the description submitted.

The Magistrate's Report and Recommendation is hereby adopted, except insofar as it is inconsistent with this Ruling and Order.

IT IS SO ORDERED.

## APPENDIX A

### REPORT AND RECOMMENDATION

This matter is now before the Court regarding enforcement of an Internal Reve-

nue Service (IRS) summons served upon Attorney Ned Willis of Perry, Iowa. The IRS is conducting an investigation of the federal tax liabilities of Willis' clients, William M. Siglin and Virginia J. Siglin of Woodward, Iowa, intervenors in this case.

On October 16, 1981, the IRS petitioned the Court, pursuant to 26 U.S.C. §§ 7402(b) and 7604(a), to enforce the IRS summons against Willis. On October 26, 1981, Chief Judge Stuart issued an order requiring Willis to show cause why he should not be compelled to testify about and produce the documents described in the IRS petition. The Siglins moved to intervene on November 6, 1981. On November 23, 1981, this matter was referred to United States Magistrate R.E. Longstaff for issuance of a Report and Recommendation. The Iowa State Bar Association moved and was granted leave to intervene in this case as *amicus curiae* on December 14, 1981. On December 21, 1981, the show cause hearing was held before Magistrate Longstaff, at which time the Court requested that the Siglins compile a list of the documents as to which they were asserting privileges. On January 5, 1982, the Siglins submitted Intervenors' List of Documents (List), in which protection based on the attorney client privilege or the work product doctrine is claimed for 644 documents. Willis submitted the documents for *in camera* inspection.

The parties have filed briefs in this matter, and have addressed the list of documents filed by the Siglins. Accordingly, this matter is now deemed fully submitted for purposes of issuing a Report and Recommendation.

## BACKGROUND

Willis has represented the Siglins since the late 1960's, performing a variety of legal tasks for them, including preparation of the Siglins' federal income tax returns. On March 4, 1981, IRS Special Agent Russell G. Talbot served a summons on Willis.

The summons requested Willis to appear before Special Agent Talbot to give testimony relating to the tax liability of William Siglin and to produce for examination books, records, and other data relating to the Siglins and to businesses with which they are associated.

The original appearance date of March 19, 1981 was rescheduled to March 31, 1981, and the appearance was continued on June 15, 1981. In these appearances, Willis answered some of Talbot's questions and produced some of the requested documents, but Willis refused to answer other questions and refused to produce certain documents on grounds of the attorney-client privilege and work product doctrine. The documents for which Willis claims the attorney-client privilege or the work product doctrine have been described and categorized as follows:

1. documents created in the course of the attorney-client relationship;

2. documents transferred by the Siglins to Willis;

3. documents representing Willis' work product and the work product of a certified public accountant retained by Willis; and

4. documents relating to a time period not covered by the IRS summons.

## APPLICABLE LAW AND DISCUSSION

### I. The Siglins' Right to Intervene

Section 7609 of Title 26 provides that persons "entitled to notice of a summons ... have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604." The Court finds that the Siglins are so entitled, and their motion to intervene is hereby granted. *See Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

### II. The IRS Prima Facie Case

The IRS issued the summons to Willis pursuant to 26 U.S.C. § 7602(2).[1]

1. Section 7602(2) authorizes the IRS:
   To summon the person liable for tax or required to perform the act, or any officer or

employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the

**1200**

In *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court held that the IRS did not need to meet a probable cause standard to obtain enforcement of its summons. *Id.* at 57, 85 S.Ct. at 254. Rather, to meet its *prima facie* case for enforcement, the IRS must show four elements: 1) that its investigation is conducted pursuant to a legitimate purpose; 2) that the summoned data may be relevant to that purpose; 3) that the information sought by the summons is not already within the possession of the IRS; and 4) that the administrative steps required by the statute have been followed. *Id.* at 57–58, 85 S.Ct. at 254–255.

With two exceptions, neither the Siglins nor Willis asserts that the four *Powell* requirements were not met by the IRS. First, the Siglins claim that seven documents[2] contain information which has already been furnished to the IRS. Four of these documents are 1099 forms, and the *Powell* requirements do not bar their production. *United States v. First Nat'l State Bank,* 616 F.2d 668, 673–75 (3d Cir.), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). As for the other three documents, neither *Powell* nor Section 7605(b) (prohibiting unnecessary examinations of taxpayers) stands as an absolute bar to enforcement of the summons. Where "a summons as a whole is not harassing, when the bulk of the materials summoned is not demonstrably in the possession of the IRS, and where the marginal burden of supplying information which might already be in the possession of the IRS is small . . . enforcement of the summons in its entirety is not an 'unnecessary examination or inspection' within the meaning of section 7605(b)." *United States v. Davis,* 636 F.2d 1028, 1038 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). Since the above three

conditions are satisfied in this case, the fact that the information in these seven documents may already be in the possession of the IRS is not a ground that justifies nonenforcement of the summons.

Second, the Siglins claim that thirty-three documents are outside the scope of the summons. In the summons the IRS requests records and documents relating to the Siglins and various businesses they are associated with for the period July 1, 1975, through February 28, 1979. The IRS summons also states that the tax years of 1977 and 1978 are under investigation. The Siglins claim that thirty-two of these documents[3] were created after February 28, 1979, for use in preparation of the Siglins' 1979 tax returns.

On the other hand, the IRS argues that the fact these documents were prepared after February 28, 1979, does not indicate they do not pertain to the time frame of the summons. Because the documents might be relevant to the 1977 and 1978 tax years, the IRS contends, the production of the documents should be compelled.

The standard of relevancy in IRS summons enforcement cases is "whether the inspection sought 'might have thrown light upon' the correctness of the taxpayer's returns." *Foster v. United States,* 265 F.2d 183, 187 (2d Cir.1959), *cert. denied,* 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1960). This standard has been further defined to require "an indication of a realistic expectation rather than an idle hope that something may be discovered." *United States v. Harrington,* 388 F.2d 520, 524 (2d Cir.1968); *accord, United States v. Matras,* 487 F.2d 1271 (8th Cir.1973). The burden is on the IRS to meet this standard of relevancy. *Powell, supra,* 379 U.S. at 57–58, 85 S.Ct. at 254–255. The burden on the IRS to show

---

business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry. . . .

**2.** Numbered 46, 47, 125, 126, 155, 156, and 157 on the List.

**3.** Numbered 386, 388–410 and 412–419, inclusive.

relevancy is minimal but "not non-existent." *United States v. Goldman,* 637 F.2d 664, 667 (9th Cir.1980).

In the instant case, the IRS has made no showing as to how these documents "might throw light upon" the 1977 and 1978 tax years. *See Goldman, supra,* 637 F.2d at 667–68. Thus, the Court finds that these thirty-two documents are outside the scope of the summons. The IRS petition to enforce the summons is denied as to those documents.[4]

In addition to the four *Powell* criteria, the Supreme Court has stated that the section 7602 summons authority does not exist solely to aid criminal investigations. *United States v. La Salle Nat'l Bank,* 437 U.S. 298, 317 n. 18, 98 S.Ct. 2357, 2367 n. 18, 57 L.Ed.2d 221 (1978). *La Salle* requires that the summons be issued before the IRS recommends to the Justice Department that a criminal prosecution be undertaken and before the IRS abandons "in an institutional sense . . . the pursuit of civil tax determination or collection." *Id.* at 318, 98 S.Ct. at 2368. In an IRS summons enforcement proceeding, opponents of enforcement bear the burden of disproving the actual existence of a valid civil tax determination or collection purpose by the IRS. *Id.* at 316, 98 S.Ct. at 2367. While the Siglins characterize the IRS investigation in this case as "an investigation of the Siglins for criminal tax fraud" (Intervenors' Brief at 1), neither the Siglins nor Willis argues that the *La Salle* test is applicable here, and neither has even attempted to meet the burden imposed by *La Salle.*

### III. *Affirmative Defenses*

An IRS summons is "subject to the traditional privileges and limitations." *United States v. Euge,* 444 U.S. 707, 714, 100 S.Ct. 874, 879, 63 L.Ed.2d 141 (1980); *see Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The Siglins and Willis assert three general affirmative defenses—the attorney-client privilege, the Fifth Amendment privilege against self-incrimination, and the work-product doctrine—to the IRS petition to enforce the summons.

### A. *The Attorney-Client Privilege*

In federal-question cases, such as the instant one, privilege questions are governed by federal common law in the absence of a constitutional provision, federal statute, or Supreme Court rule on the subject. Fed.R. Evid. 501; *United States v. Calvert,* 523 F.2d 895, 909 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). The attorney-client privilege properly belongs to the client, but it is universally accepted that the attorney may raise the attorney-client privilege. *Fisher v. United States,* 425 U.S. 391, 402 n. 8, 96 S.Ct. 1569, 1577 n. 8, 48 L.Ed.2d 39 (1976) (citations omitted). In this case, both the clients and their attorney have raised the privilege. The privilege is not unlimited, however. The Supreme Court has noted that because the privilege has the effect of withholding relevant information from the factfinder, it should apply only where necessary to achieve its purpose of encouraging clients to make full disclosure to their attorneys. *Id.* at 403, 96 S.Ct. at 1577.

Wigmore's definition of the attorney-client privilege states that the privilege exists:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived. 8 J. Wigmore, Evidence, § 2292 (McNaughton rev. 1961) (emphasis and footnote omitted) (hereinafter Wigmore).

The burden of establishing the attorney-client privilege rests on the person asserting the privilege. *Bouschor v. United States,* 316 F.2d 451, 456 (8th Cir.1963). The bur-

---

4. Document # 328 on the List consists of attorney notes concerning another of Willis' clients. It, too, is outside the scope of the summons.

den extends to all the essential elements of the privilege. *In re Horowitz,* 482 F.2d 72, 82 (2nd Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973).

In the present case, three issues arise out of Wigmore's definition: whether Willis was acting in a legal capacity; whether the documents in question are of a confidential nature; and, if so, whether the privilege was waived.

### 1. Capacity in Which the Attorney was Acting

Where the attorney-client privilege is asserted, a threshold question is whether the attorney provided services or acted in his or her legal capacity. The Siglins and *amicus* assert that the preparation of income tax returns by lawyers involves legal work and is not mere scrivening. They claim that lawyers, especially those in small towns and rural areas, often handle a variety of legal tasks for their clients and that preparation of income tax returns is inextricably a part of the total legal services such lawyers provide.

Because lawyers traditionally perform many services that are also provided by nonlawyers, it is often difficult to determine whether communications between lawyers and their clients were made for the purpose of seeking legal advice. To resolve this problem, the Eighth Circuit has adopted Wigmore's test: " 'a matter committed to a professional legal adviser *is prima facie so committed for the sake of the legal advice* which may be more or less desirable for some aspect of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice.' " *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 610 (8th Cir.1978) (en banc), *quoting* 8 *Wigmore, supra,* § 2296 (emphasis in original).

While preparation of tax returns is a task engaged in by nonlawyers as well as lawyers, such preparation ordinarily requires the giving of at least some legal advice. Under the *Diversified* test, the burden of showing that the matter "clearly appears to be lacking in aspects requiring legal advice" rests on the party seeking disclosure. *Id.* at 614 (Henley, J., concurring in part and dissenting in part). Because the tax preparation in the instant case was committed to Willis, a professional legal adviser, the IRS bears this burden here.[5]

To meet its burden, the IRS relies primarily on two cases holding that preparation of tax returns does not involve legal work. The IRS cites *Canaday v. United States,* 354 F.2d 849 (8th Cir.1966), which rests on a factual finding made by the district court that the documents prepared by the attorney for the taxpayer and those received by the attorney from the taxpayer were " 'not of such a nature as to be the subject of the attorney-client privilege.' " *Id.* at 857 n. 7. The Court found that the attorney who had prepared the defendant's tax returns was acting "merely as a scrivener," and "[u]nder these circumstances, the attorney-client relationship was not established . . . ." *Id.* at 857.

For several reasons, this Court finds that *Canaday* must be limited to its facts and must not be considered controlling in the instant case. First, the *Canaday* court did not apply the Wigmore test which was later adopted by the Eighth Circuit in 1978. Second, *Canaday* cited *Colton v. United States,* 306 F.2d 633 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), as support for its holding. *Canaday, supra,* 354 F.2d at 857. *Colton,* however, does not support the *Canaday* holding; it states that "[t]here can, of course, be no question that the giving of tax advice and the preparation of tax returns . . . are basically matters sufficiently within the professional competence of an attorney to make them prima facie subject to the attorney-client privilege." *Colton, supra,* 306 F.2d at 637. *See* Peterson, *Attorney-Client Privi-*

---

5. Willis has a general law practice in Perry, Iowa. He prepares 150–200 tax returns each year, though he is not a tax specialist or an accountant. He has represented the Siglins since the late 1960's, and his knowledge of their business enterprises is a key aid in preparing their tax returns.

*lege in Internal Revenue Service Investigations,* 54 Minn.L.Rev. 67, 91–97 (1969).

Finally, *Canaday's* precedential value has been weakened by the later Eighth Circuit case of *United States v. Cote,* 456 F.2d 142 (8th Cir.1972), in which the court found that the services of an accountant, retained by the taxpayers' attorney to conduct an audit of the taxpayers' books and records after the IRS had begun an investigation of the taxpayers, were a "necessary aid to the rendering of effective legal services to the client," and thus the accountant's workpapers were *prima facie* privileged material. *Id.* at 144.[6] While *Cote* held that the taxpayer had waived the privilege by filing amended tax returns, *id.* at 145, the court cautioned that "[t]oo broad an application of the rule of waiver . . . might tend to destroy the salutary purposes of the privilege which invite confidentiality between the attorney and his client." *Id.* at 145 n. 4. To decide the instant case on the basis of *Canaday* and thus order enforcement of the summons against Willis because he was not acting in a legal capacity in preparing the Siglins' tax returns would be to ignore the language of *Cote* and, indeed, "destroy the salutary purposes of the privilege." *Id.*

The IRS also relies on *United States v. Davis,* 636 F.2d 1028 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), in which the Fifth Circuit stated: "although preparation of tax returns by itself may require some knowledge of the law, it is primarily an accounting service. Communications relating to that purpose should therefore not be privileged, even though performed by a lawyer." *Id.* at 1043 (footnote and citations omitted). This Court notes, however, that the *Davis* holding appears to be at odds with the Wigmore test adopted by the Eighth Circuit. Even assuming *arguendo* that tax return preparation is "primarily an accounting service," the legal services involved in such a task— the research and interpretation of the tax laws and the application of that law to the particular client/taxpayer's situation— bring it within the Wigmore test.

The court in *Davis* drew no distinction between tax-return preparation by attorneys and by accountants. The court stated that because no accountant-client privilege exists under federal law, "[i]t would make little sense to permit a taxpayer to invoke a privilege merely because he hires an attorney to perform the same task." *Id.* at 1043 (footnote omitted). This analysis appears to suggest that the *Davis* court viewed tax preparation by attorneys in a vacuum—as the only service provided to a particular client—rather than as an integral part of the total legal services lawyers provide their clients.[7] If indeed the attorney in *Davis,* who was also a certified public accountant, had acted only as a tax return preparer for the taxpayer,[8] the holding in *Davis* would perhaps be more persuasive.[9]

---

**6.** Although *Cote* could be narrowly read as holding that attorneys are acting in a legal capacity only when they prepare documents in response to an IRS investigation of their clients, *see United States v. Davis, supra,* 636 F.2d at 1043 n. 17, no principled reason for such a reading exists. A government investigation of the attorney's client is not a prerequisite to the attorney-client privilege. *See* 8 Wigmore, *supra,* §§ 2294 and 2295.

**7.** In a footnote, however, the *Davis* court suggested that an attorney's accounting services *may be* within the attorney-client privilege. *Davis, supra,* 636 F.2d at 1043 n. 17.

**8.** In *Olender v. United States,* 210 F.2d 795 (9th Cir.1954), cited by *Davis, supra,* 636 F.2d at 1043, the Ninth Circuit found that the attorney, who was also an accountant, had been hired by the taxpayer as an accountant only, not as an

attorney, and therefore no privilege applied; a crucial factor in the court's analysis was that the taxpayer in *Olender* went to an accounting firm to procure the attorney/accountant's services and later went to a different attorney for legal advice concerning the net worth statement prepared by the attorney/accountant. *Olender, supra,* 210 F.2d at 806.

**9.** This Court concurs with *Canaday* and *Davis* insofar as they hold that no attorney-client privilege applies to documents used by an attorney in preparing a client's tax returns. When the attorney simply transfers figures from one form to another, no privilege applies; this is so not because the attorney is acting in a nonlegal capacity, but rather because the taxpayer intends the information on the form to be disclosed to the IRS, and thus the information is not confidential.

For the reasons discussed above, the court finds that Willis was acting as a professional legal adviser in receiving communications and documents from the Siglins, in giving them tax advice, and in preparing tax returns for them.[10] For the same reasons, the Court finds that Willis was acting in a legal capacity in preparing real estate documents and contracts for the Siglins. The IRS has failed to meet its burden to show otherwise. This holding does not, however, resolve the issue of enforcement before the Court.

### 2. *Confidentiality and Waiver*

In order for the attorney-client privilege to attach, the communications must have been made in confidence.[11] *Bouschor, supra*, 316 F.2d at 457. *See* 8 Wigmore, *supra*, § 2292. The burden of establishing the privilege is on the party asserting it; this burden extends to all the essential elements of the privilege, including the elements of confidentiality and nonwaiver of the privilege. *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 25 (9th Cir.1981). A party's bare assertion that it intended the documents to be confidential does not satisfy the burden. In other words, "the mere relation of attorney and client does not raise a presumption of confidentiality, and the circumstances are to indicate whether by implication the communication was of a sort intended to be confidential." 8 Wigmore, *supra*, § 2311, at 600.

Similarly, a party's bare assertion that it did not intend to waive the privilege is an insufficient showing to meet its burden. *Weil, supra*, 647 F.2d at 25. The privilege may be expressly or impliedly waived. *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir.1974), *cert. denied*, 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826. The content of a matter communicated to the lawyer with the intention or understanding it is to be repeated to another, is not within the privilege. Further, "[e]ven if the privilege exists, it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent." *United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979); *see* 8 Wigmore, *supra*, § 2325.

Where the privilege is claimed regarding tax documents, the party asserting the privilege has a difficult burden to meet. A good deal of information transmitted to an attorney by a client for tax return preparation is not intended to be confidential; rather, it is given to the attorney to be transmitted to others—"for example, for inclusion in the tax return. Such information is, of course, not privileged." *Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). In addition, filing tax returns with the IRS constitutes a waiver of the privilege "not only to the transmitted data but also as to the details underlying that information." *Cote, supra*, 456 F.2d at 145; *see* Proposed Fed.R.Evid. 511. As previously noted, the court in *Cote* warned against too broad an application of the waiver rule, citing *Colton, supra*, 306 F.2d at 639, as a case which "specifically withholds disclosure of memoranda and worksheets to the extent they contain confidential data not already published on the tax return." *Cote, supra*, 456 F.2d at 145 n. 4.

The Siglins contend that all the documents in question were intended to be confidential. It is clear, however, from the description of the documents in the List provided the Court by the Siglins that many of the documents are not of a confidential

---

**10.** The IRS also argues that Willis was somehow not acting in a legal capacity because in prior audits of the Siglins he had turned over similar records to *revenue* agents whereas now he refuses to release records because a *special* agent is involved. The fact that Willis may have waived the privilege in the past has no bearing on whether he was acting in a legal capacity regarding the documents in question. Nor is the reason for the prior waiver—what type of IRS agent was conducting the investigation—germane to the issue of Willis' capacity.

**11.** The privilege "protects only those papers prepared by the client for the purpose of confidential communication to the attorney or by the attorney to record confidential communications. . . ." *Colton v. United States*, 306 F.2d 633, 638 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

nature; as to the others, the privilege has been clearly waived.

### a. Communications Made in the Presence of Third Parties

Communications between attorney and client made in the presence of third parties are not privileged, *Matter of Walsh,* 623 F.2d 489, 495 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980), unless the third party's presence is "a necessary aid to the rendering of effective legal services to the client." *Cote, supra,* 456 F.2d at 144. Fourteen documents on the List are described as attorney notes of meetings with client and third parties;[12] the Siglins claim that all these documents fall within the attorney-client privilege. The Siglins do not assert, however, that the presence of the third parties at these meetings was necessary to the delivery of legal services. No assertion is made that these third parties were acting as agents or representatives of either the attorney or the client. Therefore, these attorney notes are not protected by the attorney-client privilege.

### b. Information and Documents Obtained from Third Parties

The attorney-client privilege does not extend to information the attorney obtains from third parties. *Colton, supra,* 306 F.2d at 639; *see Matter of Fischel,* 557 F.2d 209, 212 (9th Cir.1977). Thus, the documents described as Willis' attorney notes of conversations with third parties[13] are not privileged.

Further, the privilege does not attach to documents prepared by third parties who are not acting as agents of the client or the attorney. The purpose of the privilege "is to protect and foster the client's freedom of expression. It is not to permit an attorney to conduct his client's business affairs in secret." *Fischel, supra,* 557 F.2d at 211. Hence, all the documents prepared by third parties not acting as agents of Willis or the Siglins[14] are outside the scope of the privilege. For the same reason, bank statements and bank receipts of the law firm trust account[15] are not privileged.

### c. Letters from Attorney to Third Parties

The attorney-client privilege does not "conceal everything said and done in connection with an attorney's legal representation of a client in a matter." *Fischel, supra,* 557 F.2d at 212; *see United States v. Goldfarb,* 328 F.2d 280, 281–82 (6th Cir.), *cert. denied,* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964). Copies of letters sent by Willis or his law partner to third parties[16] are not confidential communications between attorney and client; to the extent that these letters may have contained client confidences, Willis waived the privilege by revealing the information to third parties. *Bump, supra,* 605 F.2d at 551.

Similarly, copies of letters from Willis to Siglin where copies were also sent to third parties[17] are not privileged. When copies of the letters are sent to third parties, they are obviously not *confidential* communications between attorney and client. In the same vein, a copy of information on Siglin's background which was provided to third parties[18] falls outside the privilege.

---

**12.** Numbered 341, 342, 433, 452, 504, 505, 517, 522, 588, 632, 633, 634, 637, and 640.

**13.** Numbered 104, 221, 268, 321, 322, 324, 330, 332, 348, 350, 351, 352, 355, 449, 450, 451, 454, 467, 479, 511, 516, 520, 535, 589, 591, 592, 593, 603, 618, 620, 621, 635, and 641.

**14.** Numbered 1, 2, 211, 241–246, 249, 359–362, 420–423, 506, 518, 540, 586, 610, 612, and 639. The Court assumes that the "business card" (# 508) was also prepared by a third party and hence is not privileged.

**15.** Numbered 117, 531, 532, 534, 536, 537, 538, 582, and 600. While some of the bank receipts may have been prepared by Willis or the Siglins, disclosing the receipts to the bank constituted a waiver of whatever privilege might have attached to the documents.

**16.** Numbered 228, 368, 383, 471, 472, 500–503, and 581.

**17.** Numbered 437, 441, and 627.

**18.** Numbered 583.

Letters from Willis or his secretary to employees of his clients[19] also fail to come within the attorney-client privilege. To the extent these letters contain client confidences, disclosing such confidences to third parties, employees of the Siglins, is a waiver of the privilege.

Where the client is a corporation, such letters to employees are not automatically privileged. In *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), however, the communications made by the corporate employees to the corporate counsel were deemed privileged because they "concerned matters within the scope of the employees' corporate duties," *id.* at 394, 101 S.Ct. at 685, and were made "at the direction of corporate superiors in order to secure legal advice from counsel." *Id.; see also Diversified, supra,* at 602. In this case the Siglins and Willis allege no such facts to cause *Upjohn* to be applicable.

### d. *Letters from Attorney to Client*

Many of the documents are described as letters from Willis to Siglin; these are apparently both retrieved and retained copies of letters written by Willis to Siglin. They are privileged only to the extent that they contain client confidences as to which no waiver has occurred. *Schwimmer v. United*

States, 232 F.2d 855, 866 (8th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). At this time, however, the record is insufficient for the Court to make a proper determination of the privilege claim as to these documents.[20]

Three of the letters are from Willis' *secretary* to Siglin.[21] The burden is on the proponents of the privilege to establish that the secretary's letter-writing services as opposed to typing and clerical services, "are a necessary aid to the rendering of effective legal services to the client." *Cote, supra,* 456 F.2d at 144. Further, seven of the documents are letters from Willis to Siglin and other shareholders of a corporate client of Willis.[22] The Siglins must prove the applicability of all elements of the attorney-client privilege in the corporate context for these documents to be protected. *See Upjohn, supra,* 499 U.S. at 386, 101 S.Ct. at 681; *Diversified, supra,* 572 F.2d at 611 (en banc).

### e. *Attorney Research*

Attorney research materials[23] may be protected by the work product doctrine; however, they are not protected by the attorney-client privilege. *Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed.

---

**19.** Numbered 100, 264, 297, and 575.

**20.** Documents described as letters from Willis to Siglin are numbered 26–29, 32, 36, 38, 66, 67, 87, 93, 94, 110, 131, 135, 137, 142, 144, 146, 148, 182, 195, 196, 199, 204–206, 208, 213, 216, 218, 219, 231, 232, 247, 254, 256, 257, 265, 298–300, 313–319, 333, 380, 381, 384, 436, 438, 455, 468, 484, 485, 487, 488, 510, 513, 524, 526, 533, 543, 548, 549, 553, 555, 558, 559, 560, 561, 562, 572, 573, 576, 585, 598, 626. Documents numbered 87, 316, and 455 are letters from Willis to Siglin; 316 and 455 contain Siglin's responses thereto, and 87 contains Siglin's return correspondence. The Siglins have the burden of showing that the responses, and return correspondence, were for the purpose of seeking legal advice. Documents numbered 135, 137, and 146, besides being letters from Willis to Siglin, also contain attorney notes of answers obtained in communications with Siglin. The Siglins have the burden of showing that the answers upon which the attorney notes are based were made in connection with seeking legal advice.

Willis' drafts of two letters (# 326 and # 349) and a letter from Willis to co-counsel (# 609) may be privileged as well; however, the Siglins must make a greater showing of the applicability of the privilege to these documents. For a discussion of the showing the Siglins must make, see the discussion in III.A.3. Nature of the Burden on the Proponent of the Attorney-Client Privilege, *infra.*

**21.** Numbered 145, 198, and 262.

**22.** Numbered 251, 252, 263, 477, 482, 489, and 490. The Siglins must show that they and the other shareholders were acting as agents of the corporation to establish application of the privilege in the corporate context. Otherwise, the privilege would be waived as to these letters, since they were addressed and sent to third parties.

**23.** Numbered 33, 34, 185, 188, 214, 215, 225, 292, 294, 429, 430, 431, 432, 444, 512, 529, 530, 596, and 597. The Siglins make no claim that any of these documents represent work product.

451 (1947). Also falling within this category are clippings from newspapers and journals;[24] they, too, are not privileged.

### f. Business Documents Prepared by Attorney

A number of documents claimed privileged are described on the List as drafts of corporate documents, real estate documents, contracts, leases, and other business documents prepared by Willis.[25] The Siglins do not assert that these specific documents contain any confidential communications, nor is it reasonable to infer from the description of these documents that they contain any client confidences. *See* 8 Wigmore, *supra* § 2311. Documents of a type designed to be disclosed to third parties do not fall within the privilege because they are not deemed to be confidential. *United States v. Johnson*, 465 F.2d 793, 795 (5th Cir.1972); *cf. United States v. McDonald*, 313 F.2d 832, 835 (2d Cir.1963) (only matters transmitted by the client that are intended to be confidential communications to his attorney are protected). All of these documents are of a type designed to be disclosed to third parties, and thus no privilege attaches to them. In addition, it is likely that these documents represent the details underlying the information already reported to the IRS, and are not privileged for that reason as well. *Cote, supra,* 456 F.2d at 145.

Willis' drafts of tax forms and preliminary computations on tax forms[26] also fall outside the scope of the privilege. This is because any information obtained from the client that is contained in these documents is assumed to have been intended to be transmitted to the IRS and is therefore not confidential. *Colton, supra,* 306 F.2d at 638.

### g. Letters to Client from Third Parties and Client-Prepared Documents

Letters sent to Siglin from third parties[27] are not confidential communications between attorney and client and thus are not privileged. *Bouschor, supra,* 316 F.2d at 457. Letters prepared by third parties and then sent to Siglin fit in the category of pre-existing documents. Absent a claim of self-incrimination, pre-existing documents not prepared by the client for the purpose of communicating with a lawyer in confidence acquire "no special protection from the simple fact of being turned over to an attorney.... Any other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Colton, supra,* 306 F.2d at 639.

This rule also applies to pre-existing documents prepared by Siglin and turned over to Willis.[28] The Siglins do not claim that these documents were prepared for the pur-

---

**24.** Numbered 143, 217, 289, 329, 334, 434, 584, 599, 624, and 625.

**25.** Numbered 271–282 and 475 (drafts of corporate documents); 39, 153, 287, 456–466, 499, 545, 551, 557, 574, 577, 578, 579, and 611 (real estate documents); 304, 305, 306, 357, 363, 364, 365, 367, 369, 370, 372, 373, 374, 376, 377, 378, and 379 (contract amendments); 229, 238, and 239 (partnership agreement forms); 248, 253, 255, 260, 303, 307, 358, 440, 453, 453B, 453C, 453E, 453F, 469, 470, 473, 474, 493, 495, 498, 514, 525, 539, 542, 594, 595, 606, 607, 608, 613, 615, 643, and 644 (contracts, leases, agreements, notes, guaranty forms, and loan applications). With the exception of # 229, # 499, and # 615, all the above documents are categorized by the Siglins as falling only within the attorney-client privilege, and are not privileged for the reasons stated above. The Siglins claim that # 229, # 499, and # 615 are also protected by the Fifth Amendment. For a discussion

of the Fifth Amendment protection, see III.B. The Fifth Amendment Privilege Against Self-Incrimination, *infra.*

**26.** Numbered 25, 40–45, 68, 69, 71–74, 95, 96, 202, 570, and 571.

**27.** Numbered 136, 366, 371, 375, 540, and 580 (those for which only the attorney-client privilege is claimed); 49, 50, 118, 127, and 138 (those for which both the attorney-client privilege and the Fifth Amendment privilege are claimed; the latter issue is discussed *infra* ). In addition, document # 623, a letter from Siglin to a third party, is not privileged for the same reasons.

**28.** Numbered 453A and 453D (for which only the attorney-client privilege is claimed); 62, 160–165, 203A, 266, and 443 (for which both the attorney-client privilege and the Fifth Amendment privilege are claimed).

pose of seeking legal advice; rather, from the description of them printed on the List, they appear to be pre-existing business records, which are not protected automatically by the attorney-client privilege. *See* 8 Wigmore, *supra*, § 2307 (the test is whether the document first came into existence as a part of a communication to the attorney.)

On the other hand, a few of the documents are letters from Siglin or his office to Willis [29] which may have been prepared for the purpose of seeking legal advice and may be confidential, and for which the privilege may not have been waived. The record at this point, however, is insufficient for the Court to make such a finding, and the burden is on the Siglins to show all the essential elements of the privilege.[30] If these letters were sent by mail, the envelopes [31] which the Siglins claim are privileged obviously lack confidentiality. In addition, the letters from Siglin's office must have been prepared by Siglin or by his agent to come within the privilege. Insofar as the privilege is asserted through the actions of an agent, the burden is also upon the Siglins to establish the fact of agency.

### h. *Attorney Notes and Calculations*

The greatest number of documents the Siglins claim to be privileged fall generally into the category of attorney notes. These documents are variously described on the Siglins' List, and they break down into three general subcategories: attorney notes; attorney notes based on pre-existing documents supplied by client; and attorney notes based on communications with client.

Initially, it should be noted that attorney notes may be privileged but only "to the extent of any expression made by [the attorney] therein of the confidences which had passed between him and his client, and as to which there had been no waiver by the client of the privilege." *Schwimmer, supra,* 232 F.2d at 866. The attorney notes need not contain express client confidences to be privileged. If from the attorney notes one can infer client confidences, then the attorney notes fall within the privilege. 8 Wigmore, *supra*, § 2320. *See United States v. Amerada Hess Corp.,* 619 F.2d 980, 986 (3d Cir.1980).

### (i) *Attorney Notes*

Many of the documents are described simply as "attorney notes," "calculations," or "worksheets," with no indication that these notes are based in any way upon client confidences.[32] On the List, the Siglins have made the distinction between "attorney notes" and "notes based on contacts with the client" in describing the documents. Because the Siglins have made this distinction and because they nevertheless have referred to some of the documents simply as "attorney notes," with no claim

29. Numbered 86, 87, 382, and 544. One document (# 486) is described as a note from a shareholder of a corporate client to Willis. For the privilege to apply, the Siglins must show that this note would be privileged in the corporate setting. *See Upjohn Co. v. United States,* 449 U.S. 383, 386, 101 S.Ct. 677, 681, 66 L.Ed.2d 584 (1981).

30. For a discussion of the burden on the Siglins, see Part III.A.3. Nature of the Burden on the Proponent of the Attorney-Client Privilege, *infra.*

31. Numbered 302, 497, 546, and 552.

32. Numbered 70, 75, 76, 82, 103, 220, 237, 240, 293, 301, 320, 323, 325, 327, 336, 338, 339, 340, 346, 435, 447, 448, 474, 483, 491, 507, 515, 521, 527, 547, 550, 554, 556, 568, "file cover," 587, 590, 601, 602, 614, 619, 629, 638, and 642. Also included in this category is the designation "attorney staff notes." *See* # 476. Documents # 338 and # 339 also are drafts of proposed documents. The portions of these documents that are proposed drafts are not protected for the reasons set forth in III.A.2.f., *supra.* Document # 223, described as attorney staff notes based on analysis and research of matters as to which legal advice was sought, and # 528, described as attorney notes based on analysis of client's legal issues, appear to be based on client confidences and therefore should be protected.

The designation of "attorney notes" is included in the description of other documents on the List, such as letters or drafts of corporate documents. *See* # 117 and # 272. The attorney notes on these documents are not protected under the attorney-client privilege because there is no indication that these attorney notes are based on client confidences.

being made that they contain, or are derivative of any client confidences, no attorney-client privilege attaches. This is because the privilege as it applies to *attorney* communications is derivative in nature; the attorney communications are protected by the attorney-client privilege only if they contain client confidences.

### (ii) *Attorney Notes Based on Pre-existing Documents Supplied by Client*

As previously indicated, pre-existing documents not created in the course of the attorney-client relationship are not privileged. It would seem to follow then that any attorney notes based on such documents would also not be privileged because the protection for attorney-prepared writings is derivative.[33] Closer scrutiny, and careful reading of Wigmore, however, point out the fallacy of this argument. Wigmore states:

> [W]here the document already had an independent existence and the communication consists in bringing its contents to *the attorney's knowledge,* that *knowledge* is not to be disclosed by his testimony.... But the physical possession of the document is distinct from that knowledge, and to compel production of the document is not to compel the disclosure of the communication.

8 Wigmore, *supra,* § 2307 (emphasis in original); *accord,* 8 Wigmore, *supra,* § 2308 (communication of the document is distinct from the document itself);[34] *see In re Navarro,* 93 Cal.App.3d 325, 155 Cal.Rptr. 522 (1972); C. McCormick, *Evidence* § 89 (2d ed. 1972).

Applying Wigmore's principles to this case indicates that Willis' notes based on pre-existing client documents are not outside the privilege just because the pre-existing documents are not privileged. For Willis' notes to be privileged, however, the information contained in the pre-existing documents which the Siglins supplied to Willis must have been intended to be confidential and not to have been transmitted by Willis to third parties, such as the IRS. If the information in the pre-existing documents was in fact transmitted to third parties by Willis, then the privilege was waived. *Cote, supra,* 456 F.2d at 145; *see Mead Data, supra,* 566 F.2d at 264 (McGowan, J., dissenting). In the latter case, Willis would be deemed to have waived the privilege that had attached to his *knowledge* of the pre-existing documents. 8 Wigmore, *supra,* § 2325.

The present record does not provide the Court with sufficient information or description to determine the confidentiality and waiver issues concerning these attorney notes based on pre-existing documents supplied by the Siglins.[34a] The notes may con-

---

**33.** The analysis is that the attorney-prepared documents are derivative in that they are privileged only to the extent they contain client confidences; thus, if the pre-existing documents do not contain client confidences, then attorney notes, by definition, could not contain any client confidences.

**34.** The courts have not always appreciated this fine distinction. In *Mead Data Central, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242 (D.C.Cir. 1977), the Court held that an attorney's written legal opinion to a client was not privileged because "part of its information base was not confidential." *Id.* at 255. The client had sought legal advice about negotiations with a third party, and since the third party knew some of the facts that the client told the lawyer, the Court found that the confidentiality test was not met.

Dissenting, Judge McGowan pointed out, "[a]doption of this position would go a long way toward eliminating the attorney-client

privilege altogether." *Id.* at 264. The *Mead Data* court would apparently protect only client confidences that the client had kept absolutely secret from everyone but the client's attorney.

Similarly, in *Community Sav. & Loan Ass'n. v. Federal Home Loan Bank Bd.,* 68 F.R.D. 378 (E.D.Wis.1975), the Court held that the "privilege does not extend to correspondence from an attorney to a client when that correspondence contains advice based upon public information rather than confidential information provided by the client," even though the "public information" was provided to the attorney by the client. *Id.* at 382. Both cases appear to be inconsistent with the rationale set forth by Wigmore, which this Court finds to be more sound.

**34a.** Numbered 24, 61, 63, 65, 81, 83, 84, 85, 88–92, 97–99, 101, 102, 105–109, 111–114, 121, 124, 130, 133, 139, 140, 141, 147, 150, 151, 168–179, 181, 183, 186, 187, 189–193, 197, 200,

tain client confidences which the Siglins did not intend Willis to transmit to third parties and which have not in fact been transmitted by Willis to third parties. The burden, however, is on the proponents of the privilege to prove *both* of these essential elements.[35] If the burden is not met as to each element, no privilege attaches.

### (iii) *Attorney Notes Based on Communications with Client*

A number of attorney notes appear to be based on communications, written or oral, with the client. From the List, it is unclear whether some of the written communications from the client were documents created by the client for purposes of seeking legal advice or were pre-existing business records;[35a] the imprecise words "information" and "data" are present throughout the List. Attorney notes based on written communications from the client to the attorney for the purposes of seeking legal advice are entitled to the same attorney-client privilege as attorney notes based on

oral communications from the client to the attorney. 8 Wigmore, *supra,* § 2307, at 594.

Where attorney notes based on communications with the client are claimed to be privileged, both the attorney notes and the content of the client's communication may be privileged.[36] Where the privilege is claimed for attorney notes based on pre-existing documents, however, the pre-existing documents, absent some pre-existing privilege, are *not* privileged while the attorney notes based on such documents *may* be privileged.

Concerning the category of attorney notes based on communications with the client, the Court cannot determine from the sketchy description of the documents provided by the Siglins whether the attorney-client privilege applies to these attorney notes. It is not clear whether the communications with the client were oral, written, pre-existing documents or documents written to secure legal advice.[36a] The Siglins

201, 203, 203B, 207, 209, 210, 212, 222, 224, 226, 227, 230, 233, and 270. In general, these attorney notes, based upon pre-existing documents supplied by the Siglins, are described as attorney notes or calculations "based on data and records supplied by client" on the List. The Court has assumed that these "data and records" are pre-existing documents. If they are not and instead are documents which were created for the purpose of communicating with Willis, the Siglins should so indicate in their supplemental description. *See* III.A.3. Nature of the Burden on the Proponent of the Attorney-Client Privilege, *infra.*

**35.** For a discussion of the burden on the Siglins, see III.A.3. Nature of the Burden on the Proponent of the Attorney-Client Privilege, *infra.*

**35a.** Documents numbered 64, 236, 258, 259, 261, 267, 269, and 312 appear to be attorney notes based on conversations that Willis had with the Siglins, or attorney notes based on documents created by the Siglins for the purpose of communicating with Willis. Assuming the communications were made in the course of the Siglins seeking legal advice, these documents may be protected if it is shown that the communication was confidential and the confidentiality was not waived; the Siglins should further describe these documents accordingly. Document # 439, insofar as it relates a conversation with the client, may be protected, if the

conversation was confidential and the confidentiality was not waived; the description should be supplemented on this point. Insofar as it relates conversations with third parties, # 439 is not entitled to protection unless the showing discussed in note 36a, *infra,* is made. With respect to other documents described as attorney notes, however, it is unclear whether they are based upon pre-existing documents, documents created for purposes of seeking legal advice, or both; these documents are numbered 65, 132, 134, 149, 234, 235, 283, 284, 285, 295, 331, 337, 343, 344, 347, 354, 385, 387, 411, 442, 445, 446, 478, 480, 481, 509, 519, 567, 569, 604, 605, 616, 617, 628, 630, and 631. The Siglins should clarify the bases of these attorney notes in their supplemental description. *See* III.A.3. Nature of the Burden on the Proponent of the Attorney-Client Privilege, *infra.*

**36.** The *content* of the client's communication is protected in that the client does not have to answer a question concerning what the client said to the attorney. The *underlying facts* discussed between attorney and client, however, *are not protected by the attorney-client privilege.*

**36a.** Documents numbered 354, 356, 439, 523, 622, and 636, described as including or being notes based on conversations with third parties on behalf of the client, are not privileged to the extent the notes are based on conversations or

must make a greater showing to meet their burden.[37]

#### i. *Communications Between Attorney and Attorney's Agent*

Notes and letters from Willis to a certified public accountant and from the accountant to Willis [38] may be privileged if the accountant was acting as an agent of Willis and his services were necessary to provide legal services to the client. *Cote, supra,* 456 F.2d at 144; *United States v. Kovel,* 296 F.2d 918, 921–22 (2d Cir.1961). However, the privilege applies only so far as these documents contain client confidences that have not been waived. The Siglins and Willis have yet to establish these facts.[39]

#### j. *Wills*

Two of the documents are a will and a codicil to a will.[40] These documents are clearly privileged. The general rule is that, "with respect to confidential communications between attorney and client for the purpose of preparing the client's will, . . . such communications are privileged during the testator's lifetime. . . ." *United States v. Osborn,* 561 F.2d 1334, 1340 (9th Cir. 1977); 8 Wigmore, § 2314, at 612.

#### 3. *Nature of the Burden on the Proponent of the Attorney-Client Privilege*

At this time, because the Siglins have provided only a general description of the types of documents claimed privileged, a determination of the applicability of the attorney-client privilege as to a large number of documents, based on the description in the List, would not be feasible. It is reasonable to infer that these documents— letters from Willis to Siglin, letters from Siglin to Willis, Willis' notes based on pre-existing documents and communications from the Siglins, and communications between Willis and his alleged agent—may contain privileged communications. The burden, however, is on the proponent of the privilege to show "the underlying facts demonstrating the existence of the privilege. . . ." *Osborn, supra,* 561 F.2d at 1339. In *Osborn,* the taxpayers "merely submitted the documents to the district court with only a short cover letter generally describing the types of documents submitted, without any affidavit or other testimony setting forth the circumstances under which the documents were made and were transferred to [the attorney]." *Osborn, supra,* at 1339. The court, therefore, found no foundation for the attorney-client privilege.[41] *Osborn, supra,* at 1339.

In this case, the List is only a general description of the types of documents

---

communications with a third party on the client's behalf, unless it is shown that the third party's communication was a necessary aid to the rendering of effective legal services, or that the third party was acting as an agent of the attorney or client. The Siglins should supplement their description of these documents to clarify the status of the third parties.

**37.** For a discussion of the burden on the Siglins, see III.A.3. Nature of the Burden on the Proponent of the Attorney-Client Privilege, *infra.*

**38.** Numbered 6, 8, 9, 11, 17, 20, 21 (for which Willis also claims work product protection), 35, 37, 128, 129, 180, 250, 286, 311, 335, 345, 353, 492, and 563 (all of which are claimed protected only under the attorney-client privilege).

**39.** For a discussion of the burden on the Siglins, see III.A.3. Nature of the Burden on the Proponent of the Attorney-Client Privilege, *in-*

*fra.* The Court finds that the CPA acted as an agent of Willis with respect to those documents for which work product protection is claimed. For a discussion of the applicability of the work product protection see III.C. The Work Product Doctrine.

**40.** Numbered 424 and 425.

**41.** Similarly, in *Federal Trade Comm'n. v. TRW, Inc.,* 628 F.2d 207, 213 (D.C.Cir.1980), the burden was not met because the Court was not "provided with sufficient facts to state with reasonable certainty that the privilege applies. . . ." Further, the Seventh Circuit has stated that the proponent of the privilege "must establish the elements of the privilege as *to each record* sought and each question asked so that at the enforcement hearing the court can rule with specificity." *Matter of Walsh,* 623 F.2d 489, 493 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980) (emphasis added).

claimed privileged; the underlying facts that would justify application of the privilege are absent. The Siglins assert that this general description of the documents combined with submission of the documents to the Court for *in camera* inspection satisfies their burden. This argument was rejected in *Osborn, supra,* at 1339, and this Court concurs in that judgment. The Siglins further contend that they can make no greater showing of the underlying facts without revealing the specific contents of the documents. The Court disagrees.

Submitting documents for *in camera* inspection may satisfy a party's burden in some cases. Where over six hundred documents are claimed privileged, however, the burden placed on the Court to inspect each document is oppressive.[42] Moreover, this Court cannot determine, merely by examining the documents, whether the contents thereof reflect confidential communications from the client to the attorney or whether such confidences have been waived. In other words, "submitting a batch of documents to the Court *in camera* [will not] provide an adequate or suitable substitute [to an affidavit which shows sufficient facts to justify the privilege] because the Court is often without information of what the document concerns or how it came into being or other relevant information which would enable it to determine whether the documents are privileged." *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 94 (D.Del. 1974).

In addition, *ex parte in camera* inspection alone is often inadequate because it deprives the court of the benefit of the arguments from the opposing party interested in

having the documents produced. *See Vaughn v. Rosen,* 484 F.2d 820, 824–25 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873. This consideration is especially important in a tax case; input from the IRS is almost a necessity if the court is to apply properly the "underlying detail" waiver test, which provides that as to details underlying filed returns, the privilege is waived. *See Cote, supra,* 456 F.2d at 145.

Contrary to the Siglins' assertion, it is possible for them to make an "intermediate" showing, which would provide more detail than the general description, but would not reveal the specific contents of the documents or the contents of the underlying facts justifying the privilege. The Siglins must "by affidavit show sufficient *facts* as to bring the … documents within the narrow confines of the privilege." *International Paper, supra,* 63 F.R.D. at 94 (emphasis in original). The brief description of each document already provided the Court is patently inadequate. Thus, the Court concludes that the Siglins should be given an opportunity to make a greater showing of the applicability of the privilege to those documents which have not been sufficiently described for determination of the privilege claim.[43]

Specifically, for *each* document, the Siglins must state who prepared the document, when, and for what purposes; whether the document contains confidential communications between attorney and client, and if so what form those communications took (oral or written, and if written, whether the writing was created in order to communi-

---

**42.** In *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146 (D.S.C.1975), Judge Hemphill conducted a "painstaking" initial *in camera* inspection of 4,500 documents, *id.* at 1157, and a final *in camera* review of 1,010. *Id.* at 1189. At one point in his 46-page opinion, the Judge commented, "[t]his court has no qualms about saying that this has been the most arduous task it has ever undertaken in its 26 years of public service. This case has already been pending five years and, if it never gets to trial, it will not be because the judge has not tried, it will be because he has died!" *Id.* at 1192 (footnote omitted).

The Siglins must remember that the *burden* is on them, not on this Court, to establish the attorney-client privilege.

**43.** The Court provides this second opportunity to the Siglins because the nature of the burden imposed on them has been unclear up to this point. The Court is aware the Siglins recognized that a blanket assertion of the privilege was improper, and that they provided the Court with a list of the documents and a general, though inadequate, description of each.

cate with the attorney or whether it was pre-existing), and a description of the general subject matter of the communication; how Willis obtained the document; whether the information in the document was communicated to third parties; whether the document included data intended to be reported to the IRS or other third parties; and whether the document constitutes underlying details of information already reported on tax returns.[44] In addition, if only a portion of a document is properly privileged under the standards already discussed, the Siglins must identify those portions that they claim privileged and those that fall outside the privilege.[45] *See United States v. American Telephone & Telegraph Co.,* 86 F.R.D. 603, 610–11 (D.D.C.1979).

Should the Siglins fail to submit an affidavit containing the above specifications, the summons should be enforced insofar as it seeks documents for which a claim of attorney-client privilege has been made, and a supplemental description was needed. Should the Siglins sufficiently describe, through supplemental affidavit, any of the documents for which the attorney-client privilege is claimed, but has not yet been determined, so as to demonstrate that the privilege indeed applies, the summons should not be enforced as to those documents.

### 4. *Attorney Testimony Concerning the Documents*

In the summons, the IRS requests not only the documents discussed earlier but also requests that Willis give testimony concerning those documents. The analysis of this issue parallels, with two important exceptions, the analysis of the attorney-client privilege.

With the possible exceptions of documents prepared by third parties and pre-existing client-prepared documents, Willis must respond to any questions concerning those documents already determined not to be privileged. He need not answer any questions concerning those documents outside the scope of the summons and the two wills that are privileged. Whether he must give testimony concerning the documents as to which the Court has not yet determined the applicability of the privilege depends upon the future resolution of that issue.

The two possible exceptions stem from Wigmore's distinction between pre-existing documents and the client's "communication of the document" to the attorney. 8 Wigmore, *supra,* § 2308. While the documents themselves are not privileged, the attorney's knowledge of the documents may be privileged. It is immaterial whether the document was prepared by the client or by a third party. What is crucial is whether the *client* "communicated" the document to the attorney *in confidence* in *order to receive legal advice.* Thus, as to a document prepared by a third party, the issue of whether Willis must testify concerning the document depends in part upon whether the Siglins delivered the document to Willis or whether Willis obtained it himself from a third party. The Siglins should include this fact in their supplemental description.

How Willis obtained the documents, however, is only the threshold issue. As to pre-existing documents prepared by third parties, and by the clients, if the Siglins intended Willis to transmit the information therein to third parties or if Willis did in fact transmit the information to third parties, any privilege that attached to Willis' knowledge of the contents of the documents was waived, and Willis must answer questions concerning those documents. Accordingly, for Willis' testimony concerning these documents to be determined privileged, the Siglins must provide the Court with the above information in their supplemental description.

---

**44.** Examples of the types of descriptions that might satisfy the Siglins' burden are set out in *Mead Data, supra,* 566 F.2d at 249–50.

**45.** Several documents, for example, contain Willis' notes of information obtained from Sig-

lin and from third parties. The information obtained from the third parties is not privileged while the information obtained from Siglin may be privileged.

B. *The Fifth Amendment Privilege Against Self-Incrimination*

The Siglins claim that a number of documents are protected not only by the attorney-client privilege but also by their Fifth Amendment privilege against self-incrimination. This privilege is available in civil proceedings as well as in criminal prosecutions "since the test is whether the testimony might later subject the witness to criminal prosecution...." *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977). The privilege must be asserted for each document and in response to each question that may be incriminating, and the determination of the applicability of the privilege is a matter for the court. *Heligman v. United States,* 407 F.2d 448, 450–51 (8th Cir.), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969).

For the court to sustain the privilege claim, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The privilege extends not only to answers or documents that would directly support a conviction but also to those that would "furnish a link in the chain of evidence needed to prosecute the claimant...." *Id.* at 486, 71 S.Ct. at 818.

The standard for application of the privilege is "whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). If the court determines the privilege is applicable, the witness may "refuse to answer unless and until ... protected at least against the use of ... compelled answers and evidence derived therefrom in any subsequent criminal case in which [the witness] is a defendant." *Lefkowitz v. Tur-*

ley, 414 U.S. 70, 78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973).

1. *Scope of the Privilege Regarding Documents*

In the instant case, it is the Siglins who assert that many of the summoned documents would incriminate *them;* the attorney, Willis, has not claimed that any of the documents would incriminate *him.* The leading case on the issue of Fifth Amendment protection for summoned documents is *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), in which the Court held that "compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself." *Id.* at 402, 96 S.Ct. at 1576. The Court went on to hold, however, that the client's attorney-client privilege combined with the Fifth Amendment privilege provided a possible basis for withholding summoned documents:

> Where the transfer [of pre-existing documents from the client to the attorney] is made for the purpose of obtaining legal advice, the purpose of the attorney-client privilege would be defeated unless the privilege is applicable. "It follows, then, that *when the client himself would be privileged* from production of the document, either as a party at common law ... or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce."

*Id.* at 404, 96 S.Ct. at 1577, *quoting* 8 Wigmore, *supra,* § 2307 (emphasis in original).

The documents in question here allegedly were not generated within the attorney-client relationship; rather, they are pre-existing documents which the Siglins turned over to Willis to obtain legal advice.[46] The documents are protected in Willis' hands only if they would be privileged in the Siglins' hands under the Fifth Amendment.[47] To summarize, the first prong of

---

**46.** These are the "Category 2" documents on the List.

**47.** Two recent Fifth Circuit cases, *United States v. Miller,* 660 F.2d 563, 567 (5th Cir.

the *Fisher* test requires the pre-existing documents to have been given to the attorney to obtain legal advice; the second prong requires them to be protected by the Fifth Amendment in the clients' hands in order to be privileged in the attorney's hands.

Considerable confusion and disagreement exist concerning the scope of the protection that the Fifth Amendment provides for pre-existing documents.[48] It is clear, however, that artificial entities (corporations, unions, partnerships, and other unincorporated associations) may not assert the Fifth Amendment privilege. *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1240, 88 L.Ed. 1542 (1944). Nor may individuals acting as representatives of such entities assert the privilege, even though the documents may incriminate the individuals themselves: "An individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis, supra,* 417 U.S. at 88, 94 S.Ct. at 2183. Thus, any documents that the Siglins held in a representative capacity are not protected by the Fifth Amendment, and the summons should be enforced as to those documents.[49]

As to documents held in an individual capacity, however, there is a split of authority among the circuits as to how much protection the Fifth Amendment provides for pre-existing documents. The two different theories under which such documents might be privileged are the content theory and the act of production theory.

### 2. The Content Theory

The "content theory" of Fifth Amendment protection for documents, which stems from *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), has been steadily chipped away at by later Supreme Court cases. The *Boyd* Court stated that "we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." *Id.* at 633, 6 S.Ct. at 533. The Supreme Court has never explicitly overruled *Boyd. See Fisher, supra,* 425 U.S. at 414, 96 S.Ct. at 1582. Two 1976 Supreme Court cases, *Fisher* and *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), however, cast serious doubt upon the continuing validity of *Boyd* insofar as it holds that the Fifth Amendment protects the contents of documents.

In *Fisher,* the Court held that the Fifth Amendment did not protect a taxpayer's

1981) and *United States v. Davis, supra,* 636 F.2d at 1040, have stated that in order to satisfy the first prong of the *Fisher* test, "the *information in the documents must be confidential* and the transfer must have been made to obtain legal advice." *Davis* at 1040 (emphasis added). This appears to be a misreading of *Fisher.* In *Fisher* itself, the content of the documents at issue was not confidential because they had been prepared by the client's accountant, *Fisher v. United States,* 425 U.S. 391, 394, 96 S.Ct. 1569, 1572, 48 L.Ed.2d 39 (1976); yet, the Court found that the first prong of the test was met. *Id.* at 405, 96 S.Ct. at 1578.

The *Fisher* test was designed so that if a client turned documents over to an attorney to obtain legal advice, the client would not lose whatever Fifth Amendment protection the documents would have in the client's hands. *Id.* at 403–404, 96 S.Ct. at 1577. As *Fisher* clearly states, the only requirement of the first prong is that the client transfer the documents "to his

attorney in order *to obtain legal assistance* ...." *Fisher, supra,* at 405, 96 S.Ct. at 1578 (emphasis added). The Fifth Circuit, like other courts (see note 34, *supra*), has failed to distinguish between "the communication of the document" and "the document itself." 8 Wigmore, *supra,* § 2308, at 596.

**48.** *See, e.g., United States v. Davis, supra,* 636 F.2d 1028; *ICC v. Gould,* 629 F.2d 847 (3d Cir.1980), *cert. denied* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *In re Grand Jury Proceedings (United States),* 626 F.2d 1051 (1st Cir.1980); *United States v. Plesons,* 560 F.2d 890 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977).

**49.** It is not clear from the Siglins' List whether any "Category 2" documents were held in a representative capacity. The Siglins should identify this fact in their supplemental description. Any such documents are not privileged.

documents, prepared by the taxpayer's accountant. The Court ordered that the IRS summons should be enforced, but it noted that "[w]hether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded are not his 'private papers,' see Boyd v. United States." Fisher, supra, 425 U.S. at 414, 96 S.Ct. at 1582.

In Andresen, the Court did face the issue of what protection the Fifth Amendment provided for "private papers." The Court upheld the use of a search warrant to seize business documents prepared by the person against whom they were used as evidence and seized from that person's office. Andresen, supra, 427 U.S. at 477, 96 S.Ct. at 2746.[50]

The courts of appeal disagree as to what, if anything, is left of Boyd and the content theory.[51] The Siglins argue that United States v. Davis, 636 F.2d 1028 (5th Cir.), cert. denied, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), correctly synthesizes the Supreme Court cases as standing for the following rule:

> [A]ny incriminating papers in the actual or constructive possession of an individual, which he holds in his individual capacity, rather than in a representative capacity, and which he himself wrote or which were written under his immediate supervision, are absolutely protected by the Boyd principle from production by subpoena or equivalent process, regardless of

whether they are business-related or more inherently personal in content.

Id. at 1043 (footnotes omitted).

In Davis, the Fifth Circuit felt that Andresen, "[h]owever illogically," must be limited to documents taken in a search. Id. at 1042. In Davis, the court refused to limit the content theory to "private papers" and instead found that the Fifth Amendment protected the content of both personal and business records. Id. at 1042–43.

Especially in light of Andresen, Davis' content theory is difficult to justify. As far as the contents of documents are concerned, no logical basis exists for distinguishing between documents seized in a search and documents obtained by enforcement of a summons. The contents of the documents remain just as incriminating regardless of which procedure the government uses to obtain them.[52]

The nub of the problem with the Davis content test is its lack of a satisfactory rationale. Two possible rationales for the test exist, but both have been discredited by the Supreme Court. First, Davis may be based on the notion that the government's use of an accused's own words, even in written form, compels the accused to be a witness against himself or herself within the meaning of the Fifth Amendment. Yet, in Fisher, Andresen, and Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the Supreme Court has focused on the word "compelled" and held that since the government did not compel the accused to create the documents, the Fifth Amendment was not violated.[53]

**50.** Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), is also a key case in the withering of Boyd. The court in Couch held that an IRS summons served on a taxpayer's accountant requiring the accountant to produce the taxpayer's personal business records did not violate the taxpayer's Fifth Amendment rights because "the ingredient of personal compulsion against an accused is lacking." Id. 409 U.S. at 329, 93 S.Ct. at 616. The court noted that the Fifth Amendment privilege "adheres basically to the person, not to information that may incriminate him." Id. at 328, 93 S.Ct. at 615.

**51.** Interestingly, Wigmore characterizes Boyd's "content theory" as dicta and refers to it as

"modern mischief." 8 Wigmore, supra, § 2264, at 382 n. 4.

**52.** Under the "act of production theory," however, there is a distinction. Government seizure of documents through the use of a search warrant requires no act of production by the person asserting the privilege while compliance with a summons does. See Andresen, supra, 427 U.S. at 473–74, 96 S.Ct. at 2745; 8 Wigmore, supra, § 2264.

**53.** Couch, supra, 409 U.S. at 329, 93 S.Ct. at 616; Fisher, supra, 425 U.S. at 409–10, 96 S.Ct. at 1580; Andresen, supra, 427 U.S. at 473, 96 S.Ct. at 2745.

Second, and more likely, the *Davis* test can be viewed as a protection of individual privacy. This purpose served by the Fifth Amendment was recognized in *Murphy v. Waterfront Comm'n.*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964). The Supreme Court recognized that "[the Fifth Amendment] reflects ... our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life.'" *Id. Fisher*, however, clearly states that the Fifth Amendment privilege against self-incrimination is not "a general protector of privacy.... Insofar as private information not obtained through compelled self-incriminating testimony is legally protected, its protection stems from other sources—the Fourth Amendment ... the First Amendment ... or evidentiary privileges such as the attorney-client privilege." *Fisher, supra,* 425 U.S. at 401, 96 S.Ct. at 1576 (footnote omitted).[54] In *Andresen*, the Court recognized that "the Fifth Amendment protects privacy to some extent." *Andresen, supra,* 427 U.S. at 477, 96 S.Ct. at 2747. The Court, however, cited *Fisher* as holding that "unless incriminating testimony is 'compelled,' any invasion of privacy is outside the scope of the Fifth Amendment's protection...." *Andresen, supra,* 427 U.S. at 477, 96 S.Ct. at 2747.

As to business documents, the First Circuit has rejected the content theory, thus affording protection "only to the testimonial content of the act of turning over the records under compulsion." *In re Grand Jury Proceedings (United States),* 626 F.2d 1051, 1055 (1st Cir.1980) (footnote omitted).[55]

The Eighth Circuit has not specifically addressed this issue. In *United States v. Plesons,* 560 F.2d 890 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977), the court found that the Fifth Amendment would have shielded a doctor's medical records from production by grand jury subpoena if the doctor had refused to produce them. *Id.* at 892–93. It is unclear from the court's opinion, however, whether this finding was based only upon an act of production theory or also upon some sort of content theory. *See id.; cf. In re Grand Jury Proceedings (Malone),* 655 F.2d 882 (8th Cir.1981) (the court said that the ordinary business and financial records of business corporations were not protected by the Fifth Amendment in the hands of the client, and therefore were unprotected in the hands of the attorney); *United States v. Harrison,* 653 F.2d 359 (8th Cir.1981) (in dicta the court stated that the Fifth Amendment privilege "protects against compulsory production of an individual's personal papers and effects as well as oral testimony." *Id.* at 361).

As applied to business-related documents, which is the type of document in issue in this case, the Court rejects the *Davis* content theory. Thus, the Court finds that the *contents* of the Siglins' documents are not protected by the Fifth Amendment.[56]

### 3. The Act of Production Theory

In *Fisher*, the Supreme Court recognized that compliance with a documentary summons had possible testimonial aspects in and of itself, wholly apart from the testimonial aspects of the contents of the docu-

---

**54.** The First Circuit has also suggested that "the personal autonomy component of the due process clause of the Fourteenth Amendment" may provide some protection for the contents of personal papers. *In re Grand Jury Proceedings (United States),* 626 F.2d 1051, 1054 n. 2 (1st Cir.1980).

**55.** The court noted that the case did not involve "papers more intimate or personal than business records." *Id.* at 1054 n. 2. In *Andresen,* the Supreme Court repeatedly stated that the documents seized were "business records." *Andresen, supra,* 427 U.S. at 471, 474, 475 &

477, 96 S.Ct. at 2743, 2745, 2745 & 2746. *Fisher* noted that the "[s]pecial problems of privacy which might be presented by subpoena of a personal diary ... are not involved here." *Fisher, supra;* 425 U.S. at 401 n. 7, 96 S.Ct. at 1576 n. 7. In the instant case, all the documents claimed privileged are business-related.

**56.** The Court notes that even under the *Davis* content test, some of the documents which the Siglins claim privileged would not be protected because they were prepared by third parties. *See* documents numbered 288 and 290.

**1218**

ments. The Court noted that compliance concedes 1) the existence of the documents; 2) the possession or control of the documents by the taxpayer; and 3) the taxpayer's belief that the documents are those described in the summons ("implicit authentication"). *Fisher, supra,* 425 U.S. at 410, 96 S.Ct. at 1580.

#### a. Documents Prepared by Third Parties

The Court further stated that whether these aspects of compliance are both testimonial and incriminating may depend on the particular facts and circumstances involved. *Fisher, supra,* at 410, 96 S.Ct. at 1580. On the facts of *Fisher,* however, where the documents were prepared by a third party, the Court was "quite unprepared to hold that either the fact of existence of the papers or of their possession by the taxpayer poses any realistic threat of incrimination to the taxpayer." *Fisher, supra,* at 412, 96 S.Ct. at 1581.

As to the third aspect, the Court stated that "[t]he 'implicit authentication' rationale appears to be the prevailing justification for the Fifth Amendment's application to documentary subpoenas." *Fisher, supra,* at 412 n. 12, 96 S.Ct. at 1582 n. 12. Because the taxpayer in *Fisher* had not prepared the papers and thus "could not vouch for their accuracy," the Court found that any implied authentication involved in producing the documents did not constitute self-incrimination. *Fisher, supra,* at 413, 96 S.Ct. at 1582.

*Fisher,* then, indicates that tax records not prepared by the person asserting the privilege are not protected under the act of production theory; none of the three aspects involved in producing the documents constitutes self-incrimination. *See United States v. Beattie,* 541 F.2d 329, 331 (2d Cir.1976). Thus, any documents not prepared by the Siglins or under their immediate supervision should be turned over to the IRS.[57]

#### b. Documents Prepared by the Taxpayer/Client

The more difficult question, which *Fisher* does not answer, is the scope of protection provided by the act of production theory for documents prepared by the taxpayer. As to the first two aspects, this Court agrees with *Fisher* that "[i]t is doubtful that implicitly admitting the *existence* and *possession* of the papers rises to the level of testimony within the protection of the Fifth Amendment." *Fisher, supra,* 425 U.S. at 411, 96 S.Ct. at 1581 (emphasis added). These documents are for the most part client-prepared business records; their existence and Siglins' possession of them "are a foregone conclusion...."[58] *Fisher, supra,* at 411, 96 S.Ct. at 1581.

As to the third aspect, the Court finds that compliance with the summons would impliedly authenticate the documents, and thus the client-prepared documents are within the protection of the Fifth Amendment. *United States v. Plesons, supra,* 560 F.2d at 893. This finding, however, does not justify noncompliance with the summons "as long as the fact of compliance with the summons is not introduced into evidence at the incriminated party's trial." *Davis, supra,* 636 F.2d at 1041 (footnote omitted); *see United States v. Authement,* 607 F.2d 1129, 1132 (5th Cir.1979).

---

**57.** Numbered 49, 50, 118, 120, 127, 138, 155, 156, 157, 158, 159, 167, 194, 288, 290, 291, 296, 308, 309, 310, 494, 496, and 566. It is unclear who prepared some of the other documents for which a self-incrimination claim has been made. The Siglins should identify the preparers in their supplemental description. The four documents prepared by Willis or his co-counsel (numbered 61, 65, 147, and 229) are not protected under the Fifth Amendment.

**58.** Compliance with the subpoena may admit the existence of the requested documents, "which in most cases will be so trivial that the Constitution is not implicated." *In re Grand Jury Proceedings (United States), supra,* 626 F.2d at 1055. The existence and possession aspects "should be ignored as de minimus" when there is no question as to the existence and location of the papers. *Davis, supra,* 636 F.2d at 1041. *But see Fisher, supra,* 425 U.S. at 432–34, 96 S.Ct. at 1591–1592 (Marshall, J., concurring) (there is little reason to assume the present existence and possession of most private papers).

The First Circuit, while rejecting the Fifth Circuit's exclusionary rule as a "judicial grant of immunity without statutory authorization," *In re Grand Jury Proceedings (United States)*, 626 F.2d 1051, 1057 (1st Cir.1980), permits compelled production of documents if the government grants immunity against use of the fact of compliance under 18 U.S.C. §§ 6002 and 6003. *Id.* at 1057–58. A grant of immunity to the person subpoenaed precluding subsequent government use of the fact of compliance with the subpoena "would not preclude subsequent government use of the contents of the surrendered documents." [59] *Id.* at 1058.

In the instant case, the implicit authentication of any incriminating documents which the Siglins hold in an individual capacity and which they themselves prepared or which were prepared under their immediate supervision, brought about by their compliance with the summons, would be remedied by a grant of immunity. As to those documents,[60] should the government grant the Siglins use immunity as to the testimony implicit in the submission of the documents, the summons may be enforced.

## C. *The Work Product Doctrine*

The work product doctrine applies in a summons enforcement proceeding. *Upjohn v. United States*, 449 U.S. 383, 398, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981). The work product doctrine provides a qualified immunity to "documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative...." Fed.R.Civ.P. 26(b)(3). While the doctrine protects documents and tangible things, it does not bar discovery of facts a party may have learned from documents that are not discoverable. 8 C. Wright & A. Miller, Federal Practice & Procedure, § 2024, at 197 (1970). Under Rule 26(b)(3), documents and tangible

things prepared by *or for* the attorney of the party from whom discovery is sought, and prepared in anticipation of litigation are protected by the work product doctrine. Fed.R.Civ.P. 26(b)(3); 8 Wright & Miller, *supra*, § 2024, at 204. Accordingly, documents prepared by the attorney's agent in anticipation of litigation would fit within the qualified protection of the doctrine.

To determine whether a document was prepared in anticipation of litigation, it is suggested that "the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 Wright & Miller, *supra*, § 2024, at 198–99. The doctrine does not apply, however, to documents prepared in the regular course of business, rather than prepared for purposes of litigation, even though litigation is anticipated. 8 Wright & Miller, *supra*, § 2024, at 198–99. Further, the doctrine applies to documents that were prepared in anticipation of terminated litigation, whether or not that litigation is related to the present litigation. *In re Murphy*, 560 F.2d 326, 334–35 (8th Cir. 1977).

The burden of showing that the documents were prepared in anticipation of litigation is on the party claiming that the doctrine applies. *Feldman v. Pioneer Petroleum, Inc.*, 87 F.R.D. 86, 88 (W.D.Okla. 1980); *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 522 (D.Del.1980). Where tax records are sought, "papers generated by an attorney who prepares a tax return are not within the work product privilege simply because there is always a possibility that the IRS might challenge a given return." *Davis, supra*, 636 F.2d at 1040.

Once the doctrine is found applicable to ordinary work product, the work product is discoverable "only upon a showing of sub-

---

**59.** The Eighth Circuit has not addressed the propriety of this type of immunity. In *Plesons*, the court did not reach this issue since Plesons had not timely asserted his Fifth Amendment privilege. *Plesons, supra*, 560 F.2d at 892.

**60.** These include all *client-prepared* "Category 2" documents. The summons should be enforced without qualification as to all other Category 2 documents. The Siglins should identify the preparers of the documents where that fact is unclear on their List.

stantial need and an inability to secure the substantial equivalent of the items through alternate means without undue hardship." *Murphy, supra,* at 334.

In contrast to the qualified immunity to discovery that the doctrine affords documents and tangible things under Rule 26(b)(3), the doctrine provides nearly absolute immunity to opinion work product. Fed.R.Civ.P. 26(b)(3). Opinion work product contains the mental impressions, conclusions, opinions, or legal theories of an attorney or representative of a party concerning litigation. Opinion work product can be discovered only in very rare and extraordinary circumstances. *See Murphy, supra,* at 336, 336 n. 20.

The Siglins and Willis claim that twenty-three documents are protected under the work product doctrine.[61] Some of these documents were prepared by a certified public accountant, who the Siglins allege was acting as Willis' agent.[62] The Court has examined these documents *in camera* and is satisfied that they were prepared or obtained in anticipation of litigation with the Iowa Department of Revenue. Further, the Court finds that the documents

prepared by the accountant engaged by Willis were also prepared in anticipation of litigation, and that the accountant was acting as Willis' agent in preparing the documents.[63]

Documents fitting within the work product doctrine [64] are to be protected unless the party seeking the documents is able to demonstrate that it has substantial need for them and is unable to gather the equivalent of the documents elsewhere without suffering undue hardship. *See* Fed.R.Civ.P. 26(b)(3). Further, any documents or portions thereof reflecting opinion work product should not be disclosed unless extraordinary need is shown by the party seeking them. *See Murphy, supra,* 560 F.2d at 336.

After reviewing the record, the Court finds that the IRS has not established that it has a substantial need for the documents, and that it is unable to obtain the information elsewhere without suffering undue hardship. Further, the Court notes that portions of some of the documents contain opinion work product. Therefore, the Court finds that the documents claimed privileged under the work product doctrine should not be turned over to the IRS.[65]

---

**61.** Numbered 3–23, 30, and 31.

**62.** Numbered 6, 8, 9, and 21.

**63.** In a recent Second Circuit case, the court carved out a narrow type of accountant work-product privilege for an accountant's tax accrual workpapers where the workpapers sought by the IRS were prepared pursuant to a required SEC audit. *United States v. Arthur Young & Co.,* 677 F.2d 211, 49 A.F.T.R.2d 82–1107, 82–1113, 82–1114 (2d Cir.1982). The court, determining that the tax accrual workpapers sought raised a conflict between the Internal Revenue Code and the Securities Exchange Act, deferred to the securities laws and did not require the tax accrual workpapers to be produced. The court upheld, however, enforcement of the IRS summons with respect to audit workpapers other than the tax accrual workpapers, and did not find a type of accountant-client privilege regarding the regular audit workpapers. This Court finds that the *Arthur Young* case is distinguishable from the instant case. In this case, a question of an accountant-client relationship is not involved since the Court has already determined that the accountant preparing some of the documents for which work product protection is claimed acted as Willis' agent. Further, the Court deems it sig-

nificant that the *Arthur Young* case does not carve out a type of accountant work product protection for regular audit workpapers.

**64.** Protection afforded documents covered by the work product doctrine may be waived. For instance, an attorney may be held to have waived work product immunity by voluntarily producing certain documents that otherwise would be protected. *See Hercules Inc. v. EXXON Corp.,* 434 F.Supp. 136, 156 (D.Del.1977). The waiver exception, however, has been construed narrowly:

> The privilege or immunity has been found to be waived only if facts relevant to a particular, narrow subject matter have been disclosed in circumstances in which it would be unfair to deny the other party an opportunity to discover other relevant facts with respect to that subject matter.

*Id.* The Court finds that in this case there has been no showing of waiver.

**65.** Because the Court finds that the documents claimed to be protected under the work product doctrine should be afforded that protection,

CONCLUSION

In conclusion, and as way of summary of the preceding discussion, the Court recommends that the enforceability of the summons be disposed of in the following manner:

1. The Court recommends that the summons should not be enforced with respect to the following documents: 3–23, 30, 31, 223, 328, 386, 388–410, 412–419, 424, 425, 528.

2. The Court recommends that the summons should be enforced with respect to the following documents: (The documents are listed according to footnote. To avoid confusion, the Court notes that it is not necessarily recommending that all documents listed in a particular footnote should be produced; documents not listed herein fall within the Court's recommendation under either paragraph 1 or 3 in this conclusion.)

Footnote 2: 46, 47, 125, 126, 155, 156, 157;

Footnote 12: 341, 342, 433, 452, 504, 505, 517, 522, 588, 632, 633, 634, 637, 640;

Footnote 13: 104, 221, 268, 321, 322, 324, 330, 332, 348, 350, 351, 352, 355, 449, 450, 451, 454, 467, 479, 511, 516, 520, 535, 589, 591, 592, 593, 603, 618, 620, 621, 635, 641;

Footnote 14: 1, 2, 211, 241–246, 249, 359–362, 420–423, 506, 508, 518, 540, 586, 610, 612, 639;

Footnote 15: 117, 531, 532, 534, 536, 537, 538, 582, 600;

Footnote 16: 228, 368, 383, 471, 472, 500–503, 581;

Footnote 17: 437, 441, 627;

Footnote 18: 583;

Footnote 19: 100, 264, 297, 575;

Footnote 23: 33, 34, 185, 188, 214, 215, 225, 292, 294, 429, 430, 431, 432, 444, 512, 529, 530, 596, 597;

Footnote 24: 143, 217, 289, 329, 334, 434, 584, 599, 624, 625;

Footnote 25: 271–282, 475, 39, 153, 287, 456–466, 499, 545, 551, 557, 574, 577, 578, 579, 611, 304, 305, 306, 357, 363, 364, 365, 367, 369, 370, 372, 373, 374,

376, 377, 378, 379, 229, 238, 239, 248, 253, 255, 260, 303, 307, 358, 440, 453, 453B, 453C, 453E, 453F, 469, 470, 473, 474, 493, 495, 498, 514, 525, 539, 542, 594, 595, 606, 607, 608, 613, 615, 643, 644;

Footnote 26: 25, 40–45, 68, 69, 71–74, 95, 96, 202, 570, 571;

Footnote 27: 136, 366, 371, 375, 540, 580, 623, 49, 50, 118, 127, 138;

Footnote 28: 453A, 453D;

Footnote 32: 70, 75, 76, 82, 103, 220, 237, 240, 293, 301, 320, 323, 325, 327, 336, 338, 339, 340, 346, 435, 447, 448, 474, 476, 483, 491, 507, 515, 521, 527, 547, 550, 554, 556, 568, "file cover," 587, 590, 601, 602, 614, 619, 629, 638, 642;

Footnote 57: 49, 50, 118, 120, 127, 138, 155, 156, 157, 158, 159, 167, 194, 288, 290, 291, 296, 308, 309, 310, 494, 496, 566. (Documents 61, 65, and 147, although not protected under the Fifth Amendment, should be further described with respect to the attorney-client privilege claim.)

3. The Court recommends that with respect to the remaining documents, the descriptions should be supplemented, as suggested in the preceding discussion. Further, as to Category 2 documents, the Court recommends that the descriptions be supplemented, as to any documents in this category not otherwise disposed of, in accordance with footnotes 49 and 60. The Court recommends that the Siglins should be given 45 days to supplement the List.

Therefore,

IT IS RESPECTFULLY RECOMMENDED that the enforceability of the summons be disposed of in the manner set forth above.

IT IS ORDERED that the parties have until and including September 1, 1982 to file objections to this Report and Recommendation. Failure to file objections to this Report and Recommendation may con-

the question of whether the attorney-client privilege applies to those documents for which

the privilege is also claimed need not be addressed.

stitute waiver of appeal. *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981).

Dated this 20th day of July, 1982.

/s/ R.E. Longstaff
R.E. LONGSTAFF
U.S. MAGISTRATE